GEORGE B. CHASE, Respondent, *v.* THOMAS LORD et al., Executors, etc., Appellants.

A statute which imposes upon the stockholders of a corporation a personal liability for the corporate debts must be construed strictly; it is in derogation of the common law, and cannot be extended beyond its literal terms.

Where the liability is imposed in case of non-compliance with provisions of the statute under which the corporation is organized, it is incumbent upon the plaintiff, in an action to enforce such liability, to establish that the provisions have not been complied with.

Under the provision of section 19 of the general insurance act of 1849 (chap. 308, § 19, Laws of 1849), making the "corporators" of a stock company organized under the act "jointly and severally liable until the whole amount of the capital *raised* by the company shall have been paid in and a certificate thereof recorded," etc.; it is not necessary that the whole amount of the capital of the company shall be paid in, and a certificate to that effect filed in order to relieve a corporator from liability. (EARL, FOLGER and MILLER, JJ., dissenting.)

The certificate referred to is that required by section 11 of the act, *i. e.*, a certificate of the comptroller, or of an examiner appointed by him, that at least an amount specified in section 5 ($150,000 if the company is organized in the county of New York or Kings, $50,000 if organized in any other county); or, in case of a life or health insurance company, the full amount required by section 6 ($100,000) has been paid in.

The object of sections 5 and 6 is to provide a preliminary fund to meet losses occurring before there are sufficient accumulations from premiums to meet them; section 11 requires no examination further than to see that at least the sum specified in sections 5 or 6 (according to the character and locality of the company to be organized) has been paid in; when this appears the comptroller is required to give the certificate, without regard to the nominal capital of the company; upon filing properly cer-

tified copies of this certificate and of the charter, as prescribed by section 11, the company is authorized to commence business; and thereafter the corporators are released from personal liability. (To the last proposition FOLGER, MILLER and EARL, JJ., dissent.)

The comptroller is not bound by the act, nor can he be required to give more than one certificate; and another, if given, is of no validity.

The word "corporators," as used in said section 19, does not include stockholders; corporators are the associates engaged in organizing the company, whose functions cease with its organization, then stockholders come in; and after their functions thus cease the corporators cannot be further held liable. (FOLGER, MILLER and EARL, JJ., dissenting.)

*It seems,* that the remedy of a creditor of a corporation organized under said act against its stockholders individually, where the whole capital stock of the corporation has not been paid in, is under the provision of the Revised Statutes in relation to corporations (1 R. S., 557, § 5), which obligates each stockholder to pay on each share of his stock the sum necessary to make it full paid, or such proportion thereof as shall be required to pay the corporate debts; which provision is made applicable by the insurance act to corporations organized under it. (§ 17.)

Where a corporator is liable under said section 19, the cause of action, upon his death, survives against his estate.

*Chase* v. *Lord* (16 Hun, 369), reversed.

(Argued January 31, 1879; decided April 8, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 16 Hun, 369.)

This action was brought against defendants as executors of the will of Rufus L. Lord, deceased, to collect the amount of a policy issued by The Columbian Insurance Company, of which company the deceased was a stockholder.

Said company was organized as a joint stock company, in the city of New York, under the general insurance act of 1849 (chap. 308.)

By the charter of the company its capital stock was fixed at $500,000, with liberty to increase it to $1,000,000. The complaint alleged, in substance, and it appeared, that the proposed charter of the company was filed in the office of the secretary of State; that the attorney-general made examination thereof, and on August 4th, 1857, certified to the

comptroller of the State, that he found it in accordance with the requirements of the act, etc. The comptroller thereupon caused an examination to be made by three disinterested persons appointed by him, who certified under oath that the amount of $150,000, being part of the capital of said company, had been paid in and was possessed by it in money, a copy of which certificate was filed in the office of the secretary of State, who thereupon furnished certified copies of the charter and certificate, which were filed by the corporators in the office of the clerk of the county of New York. Thereafter the company perfected its organization by the election of officers, and commenced the business of marine insurance. In March, 1863, the capital stock was increased to $1,000,000. Subsequently, under and as authorized by an amendment of the charter by statute (chap 127, Laws of 1864), the capital was increased to $3,500,000.

Plaintiff claimed to recover on the ground that no other certificate of the payment of capital than that above specified was filed.

Further facts appear in the opinion.

*D. D. Lord,* for appellants. It was not necessary that the whole of the capital stock should be subscribed before the organization of the company. (Fisher's Com. Law Dig., 7087, title Public Company; A. & A. on Corps. [8th ed.], § 554, p. 537; *S. and S. R. R. Co.* v. *Thatcher,* 11 N. Y., 107.) The words "amount fixed by the charter," as used in section 13 of the act (Laws 1849, chap. 308), mean the amount settled, by the united instruments which evidence the grant of franchise, as the capital on which the corporation was allowed to transact business, and that is the amount to be stated in the comptroller's certificate required by section 11, or an amount equal to that specified in section 5. (*Jones* v. *Dana,* 24 B., 402.) The stockholders were relieved from any individual liability by the certificate filed. (*Corning* v. *McCullough,* 1 N. Y., 53; *Aspinwall* v. *Sacchi,* 57 id., 331; *Eaton* v. *Aspinwall,* 19 id., 119.) The act of 1849 (chap.

308) should be strictly construed. (Scdgw. on Stat. Const., 194, 280; Broom's Legal Maxims, 477; *Waller* v. *Harris*, 20 Wend., 56; *Garrison* v. *Howe*, 17 N. Y., 45; *U. S.* v. *Wittberger*, 5 Wheat., 76, 95, 105; *Irvine* v. *McKean*, 23 Cal., 42.) The making and filing of a second certificate would have been a nullity and of no benefit to defendants. (*Erickson* v. *Smith*, 2 Abb. Ct. App. Dec., 64; *Williams* v. *Merle*, 11 Wend., 80; 4 Edms. Stat., 207.) The liability imposed by section 19 of the act, if it imposed a new liability, is a penalty, and would not survive against the executors of Rufus L. Lord. (*Mer. Bk.* v. *Bliss*, 35 N. Y., 412, 416; 4 Edmonds' Stat., 207, 210; *Bk. of California* v. *Collin*, 5 Hun, 209.)

*William C. Whitney*, for respondent. Under chapter 308 of the Laws of 1849, to exempt the stockholders of a corporation organized from individual liability, payment of the full capital and the recording of a certificate thereof was necessary. (*Smith* v. *People*, 47 N. Y., 330; *Rochester* v. *Barnes*, 26 Barb., 657; *Allen* v. *Sewall*, 2 Wend., 338; *Norris* v. *Johnson*, 34 Md., 485; *Paine* v. *Stewart*, 33 Conn., 516; *Story* v. *Furman*, 25 N. Y., 214; *Moss* v. *Oakley*, 2 Hill, 269; *Eaton* v. *Aspinwall*, 19 N. Y., 122; *Hart* v. *Achilles*, 28 Barb., 582.) The cause of action survives against an estate, because the liability of stockholders in such a case as this is a primary one, and they are on the footing of partners in an unincorporated association. (*Corning* v. *McCulloch*, 1 Com., 47; *Allen* v. *Sewall*, 2 Wend., 327; *Harger* v. *McCullough*, 2 Den., 119–123; *Moss* v. *Oakley*, 2 Hill, 265; S. C., 5 id., 131; *Moss* v. *Averill*, 10 N. Y., 449; *Story* v. *Furman*, 25 id., 214; *Conklin* v. *Furman*, 48 id., 528; S. C., 57 Barb., 484; *Waite* v. *Ferguson*, 14 Abb. Pr., 379; *Moss* v. *McCullough*, 7 Barb., 279; *Abbott* v. *Aspinwall*, 26 id., 202; *Paine* v. *Stewart*, 33 Conn., 516; *Coleman* v. *White*, 14 Wis., 700; *Davidson* v. *Rankin*, 34 Cal., 503; *Mohelumne Hill Canal and Mining Co.* v. *Woodbury*, 14 id., 265; *Young* v. *Rosenbaum*, 39 id., 646.)

The liability would continue until the certificate was recorded. (*Aspinwall* v. *Sacchi*, 57 N. Y., 334.) The cause of action survives against an estate, because of the pledge made to the public in the charter of the individual liability of the corporators. (*Story* v. *Furman*, 25 N. Y., 214; 3 R. S. [1st ed.], § 11; *Walker* v. *Crain*, 17 Barb.; U. S. Const., § 70, art. 1; *Lowry* v. *Inman*, 46 N. Y., 119; *Hawthorne* v. *Cabel*, 2 Wal., 10; *Conant* v. *Van Schaick*, 24 Barb.; 87; *Hatch* v. *Burroughs*, 1 Wood, 439; *Prov. Sav. Ins.* v. *The Jackson Place, etc.*, 52 Mo., 552; *Norris* v. *Wrenschall*, 34 Md., 492; *Aspinwall* v. *Sacchi*, 57 N. Y., 331.) The claim being upon contract it survives against the estate of a stockholder. (2 R. S. [star page], 113; 3 id. [6th ed.], 732; Laws of 1848, chap. 40, § 10; *Bailey* v. *Hollister*, 26 N. Y., 112.) The liability continued until the certificate was recorded. (*Aspinwall* v. *Sacchi*, 57 N. Y., 334.)

DANFORTH, J. In October, 1857, The Columbian Insurance Company was organized under the act of 1849, chap. 308, providing for the incorporation of insurance companies. On the first of February, 1865, the plaintiff procured a policy of insurance from that company upon the ship Eagle Wing, which was soon after lost and thereby, as is conceded, a claim arose in his favor against the company. In January, 1866, the company was dissolved, and its affairs placed in the hands of a receiver, by whom the plaintiff was paid a portion of his claim. The defendant's testator was a stockholder in the company during all the times above stated, and he dying, this action is brought against the defendants, as his executors, the plaintiff claiming that the testator became personally liable to pay the loss, by reason of non-compliance by the company with the conditions of the act.

It is contended by the appellant; First: That the testator was never liable; and Second: If he was liable, the cause of action did not survive against his estate. With the second proposition we have no difficulty. The defendants took the stock subject to any liability which existed on account of

it; *Bailey* v. *Hollister*, 26 N. Y., 112–116; and if the testator was liable to pay the plaintiff's demand, the defendants, as his representatives, are equally so. The plaintiff contends that the liability in question was incurred by the testator, because the provisions of section nineteen of the statute above named were not complied with. That section is in these words: "The trustees and corporators of any company organized under this act, and those entitled to a participation of the profits, shall be jointly and severally liable until the whole amount of the capital raised by the company shall have been paid in, and a certificate thereof recorded, as hereinbefore provided. Notes taken in advance of premiums under this act are not to be considered debts of the company in determining whether a company is insolvent, but are to be regarded as assets of the company." The question is not free from difficulty; and this difficulty arises from the vague manner in which the Legislature has sought to express its meaning. The statute has been before the courts in several cases: (*Mygatt* v. *N. Y. Protection Ins. Co.*, 21 N. Y., 61; *White* v. *Haight*, 16 id., 317; *People ex rel. Barton* v. *Rens. Ins. Co.*, 38 Barb., 323; *Cooper* v. *Shaver*, 41 id., 151; *Thomas* v. *Achilles*, 16 id., 491; and in *Hart* v. *Achilles*, 28 Barb., 582), Judge MARVIN speaks of it as "extremely obscure, faulty and imperfect," and in *Thomas* v. *Achilles*, (16 Barb., 495), as "ambiguous and imperfect;" but the present, so far as we can discover, is the first case in which a judicial decision has been sought as to the construction of the section above cited, and we are, therefore, unaided by any authority.

In the first place, it is clear that there was no common law liability on the part of the testator; and the legal presumption is that all statutory conditions have been complied with. This presumption continues until the contrary is shown. No duty rested upon the stockholder to do this; and it is incumbent on the plaintiff to establish a non-compliance with the provisions of the statute, before he can charge the defendant: (*Bruce* v. *Driggs*, 25 How. Pr., 71.)

At this point it is not necessary to consider whether the requisite amount of capital was paid in, because if it had been, and the proper certificate was not recorded, the liability would attach; (*Aspinwall* v. *Sacchi*, 57 N. Y., 335.) We should naturally expect to find in the section itself words to satisfy the reference to the certificate, for we are referred to some antecedent provision by the words " as hereinbefore provided." There is, however, nothing in the section itself to give information as to the character, form or contents of the certificate, or to indicate by whom it shall be made. We must look elsewhere in the statute for the antecedent. By the seventh section provision is made for certificates to be furnished by the comptroller, under certain circumstances, to companies organized in other States or in foreign countries. Section eight prohibits a company organized under the act from holding real estate beyond a certain period, " unless it shall procure a certificate from the comptroller," as therein provided. Neither of the certificates required by these sections can in any manner affect the question before us; those of the seventh section do not relate to domestic corporations, and that of the eighth section relates to a matter having no connection with the case in hand. By the third section the associates, (who are also styled corporators) who have undertaken to form a company under the act, are required to file in the office of the secretary of State a declaration signed by them, which, among other things, shall comprise a copy of the charter proposed to be adopted by them; and by section ten it is made their duty to declare in this charter the mode and manner in which the corporate powers given by the act are to be exercised, " together with the amount of capital to be employed in the transaction of its business ; " and by section eleven it is made the duty of the attorney-general to examine this charter, and if it is found to be in accordance with the act, and not inconsistent with the constitution or laws of the State, to certify the same to the comptroller, and the comptroller shall thereupon cause an examination to be made, either by

himself or by three disinterested persons appointed by him for that purpose, who shall certify under oath that an amount equal to at least the amount specified in the fifth section of the act, if it be a stock company, has been paid in and is possessed by it in money or certain stocks, etc.; or if a mutual company, that it has received and is in the actual possession of the capital, premiums or engagements of insurance, as the case may be, to the full extent required by the fifth section of the act; or if it be a life and health insurance company, to the full amount, and invested in the same manner as required by the sixth section of the act. Copies of these certificates are to be filed in the office of the secretary of State, and it is made his duty to furnish the corporation with the certified copy of the charter and certificates, which upon being filed by them in the office of the clerk of the county in which their company is to be located, shall be their authority to commence business and issue policies. There are no other provisions for a certificate of any kind, and it seems to us that the certificate referred to in the nineteenth section is that which we find in the eleventh section, and which is above set forth.

First: It is antecedent to the provision of the nineteenth section. Second: It is the only one of all contained in the act which bears a sensible relation to its demand. Third: It enables us to give the act a reasonable and not strained construction. This we are bound to do; for so far as it subjects the stockholder to any responsibility for the corporate debts, it is manifestly in derogation of the common law; (1 Parsons on Contracts, 143; *Stedman* v. *Eveleth*, 6 Metc., 114); and we are not at liberty to extend its effect beyond its literal terms, by enlarging or aggravating the liability of the stockholder. Says Chief Justice SHAW, in *Gray* v. *Coffin*, (9 Cush., 199), in considering a claim not unlike that before us: "To create any individual liability of members for the debt of a corporation, a body politic, created by law, and regarded as a legal being, distinct from that of all the members composing it, and capable of contracting and being

contracted with as a person, is a wide departure from established rules of law, founded in considerations of public policy, and depending solely upon provisions of positive law. It is, therefore, to be construed strictly, and not extended beyond the limits to which it is plainly carried by such provisions of statute." So construed, the act is coherent.

Section one permits a certain number of persons to associate and form an incorporated company, either first, to take marine risks; or secondly, for fire insurance; or thirdly, on health or life. Such persons are styled corporators. Section three requires them to file the declaration and charter in the office of the secretary of State. By section four they may then take subscriptions to the stock, or in case of mutual insurance receive propositions for insurance, as stated in the fifth section. The fifth section then provides that no joint stock company shall be organized in the city of New York, with a capital less than $150,000; or, in case of mutual insurance, until agreements have been entered into for insurance with at least 100 applicants, the premiums on which, if it be marine, shall amount to $300,000; or if fire insurance, to $200,000, and notes have been received in advance for the premiums on such risks. By section six no life or health insurance company shall commence business, until a cash capital of $100,000 shall have been paid in and actually invested, as required by the act; and section seven declares in language applicable to all these branches of insurance : "It shall not be lawful for any company organized under this act to transact business, unless possessed of capital or securities as hereinbefore mentioned."

The object of section five has already been declared by this court. In *Mygatt* v. *N. Y. Protection Ins. Co.* (21 N. Y., 59), it is said by the court, SELDEN, J.: "The main reliance of all insurance companies for the payment of losses, after becoming once fairly established, is upon the sums received for premiums. But losses may occur before their accumulations from this source are sufficient to meet them. For this reason it was deemed wise and prudent on the part of the Legislature

to provide that every insurance company, whether joint stock or mutual, should have at the outset a fund sufficient to meet its early losses.    *    *    *    Sections four and five relate to this preliminary fund, and to nothing else." (See, also, *People ex rel. Barton* v. *Rens. Ins. Co.*, and *Thomas* v. *Achilles, supra.*) Then follow sections ten and eleven, to which we have before adverted, requiring an examination by the comptroller and his certificate, or the certificate under oath of three appraisers appointed by him, as to the actual payment of capital equal at least to the amount specified in the fifth section, or the receipt by the company of premiums or engagements of insurance to the full extent required by the fifth section of the act ; or if a life or health company, to the full amount required by the sixth section of the act.    Section nineteen then declares the trustees, corporators, and those entitled to a participation of the profits, jointly and severally liable " until the whole amount of the capital *raised* by the company shall have been paid in, and a certificate thereof recorded, as hereinbefore provided." If this section has any meaning, is it not that which we have given to it ?    So considered, it takes its place naturally in the scheme of organization.    There is required first, an association of at least thirteen persons ; second, a charter, prepared and filed in the office of the secretary of State ; third, books for stock subscriptions ; or if a mutual company, then proposals for insurance ; fourth, a declaration of the amount of capital requisite in each kind of insurance ; fifth, an examination by the comptroller or his appraisers as to the fact of payment of the capital specified in the fifth and sixth sections, and his or their certificate ; and sixth, a declaration of individual liability until the capital so specified is paid in and certificate recorded. This surely is the literal and obvious reading of the statute ; and if correct, it does not entitle the plaintiff to recover, for it is conceded that the capital required by the fifth section was paid in, and the certificate required by the eleventh section was duly recorded.

Again, it is a significant fact, and one that supports the

view so far taken of the purpose and object of the certificate required, that "corporators" are included in the liability prescribed, or attempted to be, by the nineteenth section. The corporators are the associates, (§§ 1, 3) who are the getters up of the company, and whose functions cease with its organization; and its organization is complete when the certificate called for by the eleventh section is given. It is reasonable to hold the corporators until then, and until in truth and in fact the capital prescribed in the fifth section, and without which it is not lawful for the company to do business (§ 7), is paid in; but it would be unreasonable and absurd to hold them liable after their functions ceased, and after they ceased to have any control or interest in the company. In the same manner, and to the same effect, is to be noticed the omission from the nineteenth section of the stockholders. Corporators exist before stockholders, and do not exist with them. When stockholders come in, corporators cease to be. Corporators are made liable if they launch the company without complying with the law. Trustees are liable because business cannot be done except by them; and the statute declares that it shall not be lawful for any company organized under the act to transact business, unless possessed of capital "as hereinbefore" (*i. e.*, in the fifth and sixth sections) "mentioned," and that they shall be liable if they offend. "Those entitled to a participation of the profits" are liable. This does not include stockholders, but refers to those persons who are specifically mentioned in section twenty-one as entitled to a participation in the profits. They are not members of a stock company, but are members of a mutual company, and hold a peculiar relation to the company, unlike stockholders. In regard to them this court says, in *Mygatt* v. *N. Y. Protection Ins. Co.* (*supra*), contributors under the twenty-first section "are to all intents and purposes partners in the company. * * * The whole section exhibts an intent that those who contribute the additional capital should be associates in the company; and any other supposition is inconsistent with its language and structure."

If stockholders were intended to be included, why are they not named as such in the section? They are referred to in section thirteen, where the officers of the company are required, among other things, to give in their annual state ment "a list of the stockholders of a stock company," and they are required, in certain cases, to make up deficiencies; or in case of failure, to return their certificates (§ 14), when the consent of stockholders is required. (§ 16.) Stockholders, in certain cases, may sue and be sued; and by section twenty they are made liable as stockholders to the extent of any dividend made contrary to the provision of the act. It is a matter of significance that they should be dropped from the nineteenth section, and a new class designated. The last clause of section nineteen also favors the construction. It says: "Notes taken in advance of premiums under this act are not to be considered debts of the company in determining whether a company is insolvent." This has reference to the preliminary fund called for by section five, and there declared "part of the capital stock."

The money required to be paid in and the notes to be contributed, as prescribed by section five, may be considered as capital "*raised*" or *procured*, as contra-distinguished from "the full amount specified in the charter" (§ 4); or "its capital" (§ 8); or "the amount of capital to be employed in its business" (§ 10); or the "capital of such company" (§ 13); or the "amount of capital fixed by the charter of the company." (§ 13.) All these expressions appear in the act, and either one of them repeated in the nineteenth section would have rendered so much of its meaning clear. Neither is there used; on the contrary, the word used is plainly a word of qualification or diminution, showing that something less than the whole is intended. It does not say "until the whole amount of the capital of the company," but until the whole amount of the capital "*raised*" by the company. This seems to indicate that there is still a portion of capital not within the term; the word "raised" must be deemed to qualify and restrain the word "capital." It is not easy to

give to the words a definite meaning, but it is obviously something different from the entire capital; so it is different from the amount of " capital to be employed in its business," or the amount of " capital fixed," and indicates a smaller sum.  If we imply the words " specified to be," or " required to be," and insert them, we have a coherent statute.  It would then read : " Until the whole amount of the capital ' specified ' or ' required ' to be raised shall have been paid in, and a certificate thereof recorded, as hereinbefore provided."  Now observe, the certificate named in the eleventh section is that " an amount equal at least to the amount specified in the fifth section, if a stock company, has been paid in ; or if a mutual company, that it has received premiums to the full amount required by the fifth section ; " and then turning to the fifth section, we find for stock companies a minimum capital stated, and a declaration that the notes referred to in the case of a mutual company shall be considered " a part of the capital stock."  This satisfies the requisition of the eleventh section, and, as we have above held, the certificate of the eleventh section is the one referred to in the nineteenth section.  In the case of *The People* v. *Rens. Ins. Co.* (*supra*), HOGEBOOM, J., in a case then before the General Term of the Supreme Court, referring to section five, says the notes spoken of in it constitute the capital stock, or *part of it.*  (See, also, *Thomas* v. *Achilles* and *Mygatt* v. *Protection Ins. Co., supra.*)

It is contended, however, by the respondent's counsel, that the judgment should be sustained, upon either one of two views which he presents, with reference to the certificate. The first, that the certificate required by the eleventh section should contain a statement that the whole amount fixed or stated in the charter as the capital of the company had been paid in ; and this seems to have been the view of the learned judge who delivered the opinion of the Supreme Court ; but we see no foundation for such position.  Section ten provides for a statement in the charter of the amount of capital to be employed in the transaction of the business of

the company. This charter is then by section eleven to be placed before the comptroller, and an examination is required by him or his appointees, and a certificate "that an amount equal at least to the amount specified in the fifth section," in one case ; or in another, that it has received "engagements of insurance   *   *   *   to the full extent required by the fifth section ; " or in another, "to the full amount required by the sixth section ; " with no reference at all to "the statement in the charter as to the amount of capital to be employed in the transaction of business." The provisions of all three sections, the fifth, sixth, and tenth, were then in the minds of the Legislature when section nineteen was framed ; and if it was intended that the examination or certificate should relate at all to the amount of capital fixed by the charter, it would have been so expressed. It was not ; but on the contrary, the language is, in this respect at least, neither obscure nor ambiguous, but plain and explicit. It refers in words to the fifth section, and not to the tenth, and to the provision for capital in the fifth section, and not to the statement of the amount in the charter. We think the eleventh section does not require any examination further than to see that at least the sum named in the fifth section has been paid in, or any other certificate than one to that effect.

The other view presented by the respondent is, that the words "as hereinbefore provided," contained in the nineteenth section, should be so amended as to read *in the manner* hereinbefore provided. This, doubtless, would create a difference in the reading, and permit a very different construction. But what authority have we for such an interpolation ? So much of the section is plain and unambiguous ; "a certificate thereof recorded as hereinbefore provided," importing one certificate of which mention has been before made. "A certificate thereof recorded in the manner hereinbefore provided " would permit another certificate, and prescribe merely the manner of recording.

The counsel for the respondent says : " The latter view

contemplates that the company might commence the trans-
action of business upon a portion of its capital, so that there
would be a period of time during which the full capital, as
fixed by the charter, would not be paid up, but the company
would be legitimately engaged in the transaction of business ;
and though bunglingly expressed, that it was the intention
to provide that when, in course of time, the capital stock
became fully paid, that the obligation is impliedly put upon
the comptroller of the State, upon the request of the com-
pany, to make an examination, and give a certificate of that
fact ; which, being made and recorded in the manner pro-
vided by the eleventh section, would constitute the termina-
tion of the individual liability." And he says : " The whole
nineteenth section seems to have had in contemplation that
there would be a period of time during which the trustees
and stockholders of the company could be legitimately
engaged in the transaction of business under the charter ;
but during which time the whole amount of the capital would
not have been paid up, and the proper certificates made and
filed." The whole of this argument, except so much as con-
tends for a second certificate, accords with the view we have
above expressed, but is entirely repugnant to the ground
stated by the learned judge who delivered the opinion in the
court below, as the only one upon which the judgment could
stand. That court holds that but one certificate is provided
for, viz. : the one mentioned in the eleventh section ; but the
court say : " This section " (the nineteenth) " in terms
requires it to show that the whole amount of capital raised,
that is, mentioned or provided for in the charter, has been
paid in." We have before adverted to this construction,
and agreeing that only one certificate is required, have come
to the conclusion that it was not intended to contain the
statement supposed by the learned judge, and that his con-
struction is erroneous, and inconsistent with the language
and obvious intent of the eleventh section. It seems from
the printed argument submitted to us by the respondent,
that the view of the court below is not now insisted upon.

The learned counsel argues that there should be two certificates: one under the eleventh section; and the other to the effect that the whole capital named in the charter has been paid in. We can find no support for the theory in regard to a second certificate. The comptroller has by the act a single duty to perform; it is indicated by the eleventh section. He can appoint appraisers for one purpose; it also is stated in the eleventh section. His duty, and that of the appraisers, was performed. He was not bound, nor could he be required, to do more. No provision is made for a second examination by the comptroller, or for any examination or certificate by him or the appraisers as to any other matter or fact connected with the company than the ones before referred to; and while neither the company, nor any person connected with it, could require him to act; if he should voluntarily act and furnish a certificate, it would be of no importance or validity, because not required by the statute. (*Erickson* v. *Smith*, 2 Abb. Ct. App. Dec., 64.)

The respondent also says, that, technically speaking, the words "and a certificate thereof recorded, as hereinbefore provided" refer back to the one certificate specified in the act; and the construction would be that it must meet the requirements of the nineteenth section, in order to constitute to the stockholders an exemption from individual liability. The difficulty with this view of the case is that it is not so written in the statute. The one certificate specified in the act (§ 11), when copies have been properly certified and filed, is made the authority of the company " to commence business and issue policies, and the same may be used in evidence for or against said corporation." Now, it is important to bear in mind that every act required by the statute to be done, before the intervention of the attorney-general can be invoked, must be done before the company is organized,—before, therefore, there is any stockholder,—and must be done by the associates or corporators. These persons (§ 3) are to file in the office of the secretary of State a declaration signed by themselves, expressing their *intention* to form a

company, for the purpose stated in the act ; and this declaration must comprise a copy of the charter proposed to be adopted by them ; and this charter, so filed, must state, among other things, the amount of capital to be employed in the transaction of its business. They are to publish a notice of this intention for six weeks, and after this filing of their declaration, and this notice, may then open books for subscription to the capital stock of the company so intended to be organized, "and to keep the same open until the full amount specified in the charter is subscribed." Sections five and six specify the smallest amount of capital which the various kinds of insurance companies shall have ; and then follows (§ 7), the declaration that it shall not be lawful for any company organized under the act to transact business "unless possessed of capital or securities, as hereinbefore mentioned ;" not, it will be seen, "until possessed of the full amount of capital specified in the charter," which would have been the natural language to employ if the Legislature had any other limitation in view than the arbitrary sum stated in the fifth section ; and when, by section eleven, a certificate is required, it is of the possession of the sum specified in the fifth and sixth sections, and not the sum specified in the charter, *i. e.*, the full amount subscribed. This choice of one of two events, so unlike in their effect, — the happening of which is to be determined by the official certificate of State officers, — seems to me very important in determining the intent of the Legislature, and entirely conclusive as to the proper construction of the eleventh section, which requires the certificate. Again, it must be kept in mind that the effect of this certificate is not only prescribed, but it is declared "that the same may be used in evidence for or against said corporations ;" (§ 11.) Except for this provision, it would be inadmissible in evidence, for any purpose ; and with the provision, it would be inadmissible in any action against the stockholder for a liability as such, and would be not only no protection, but not even evidence in the action.

So far, the construction given by us to the eleventh section, and the form and object of the certificate thereby required, conforms to the letter and intent of the statute. Its language is precise and unambiguous, and it is only necessary to expound the words used in their natural and ordinary sense, to learn the intention of the Legislature : *Smith* v. *The People*, (47 N. Y., 330).

We are, however, urged by the learned counsel for the respondent to consider the policy of the State, as exhibited in the organization of similar companies, before and after the act of 1849. By his industry, we are favored with references to many statutes enacted between 1825 and 1841 ; and in connection with these examples, our attention is called to the familiar doctrine reiterated by this court in *Smith* v. *The People*, (*supra*), to the effect that acts *in pari materia*, passed before or after, may be referred to, in order to ascertain the intent of the Legislature in the use of particular terms ; and within the same rule and the reason of it, cotemporaneous legislation, although not precisely *in pari materia*, may be referred to, for the same purpose. This rule applies to cases of doubt and uncertainty, and is, therefore, thought by the respondent applicable to the nineteenth section. We acknowledge the force of the suggestion and the correctness of the rule of law. But to what conclusion does its application bring us, if we accept the assurance of the learned counsel that these various statutes " each contain a proviso for an individual liability to an amount equal to the stock held by each stockholder ? " This is not the unlimited liability said to be imposed by the nineteenth section, and by virtue of which the judgment below was rendered. The action is not brought on such a basis. No evidence was given tending to show the amount of stock held by the testator. Whether one share of stock, or 1,000, or any larger number, the result would have been the same. The illustrations do not seem to aid us ; instead of an unlimited liability they plainly impose a limited and not unreasonable liability. They also provide, as the counsel assures us, for proof, by

the oath of certain of the officers of the company, that the capital has been paid in, before the company shall commence business.   Neither of these provisions are contained in the act in question; and their omission is a fact of some consequence.   But it is said in the same case, *Smith* v. *The People* (*supra*), that legislative action at the same session is to be regarded as speaking the mind of the Legislature upon a common subject.   We find, therefore, among the Laws of 1849 an act passed the day after the one in question, incorporating The Watertown Water-works Company (Laws of 1849, chap. 426), in which the stockholders are made liable to the creditors of the company, to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by the company, until the whole capital stock has been paid in, and a certificate thereof made and verified by the president and a majority of the directors and recorded in the clerk's office of Jefferson county.   Neither of these provisions are contained in the act before us.

It seems to be thought that it is only by construing section nineteen as imposing a personal liability the creditors can have security outside of the corporation; but that is not so. By section seventeen all companies formed under this act are declared to be bodies politic and corporate, in fact and in name, and subject to all the provisions of the Revised Statutes in relation to corporations, so far as the same are applicable.   Among those provisions is the following: "Where the whole capital of a corporation shall not have been paid in, and the capital paid shall be insufficient to satisfy the claims of its creditors, each stockholder shall be bound to pay, on each share held by him, the sum necessary to complete the amount of such share, as fixed by the charter of the company, or such proportion of that sum as shall be required to satisfy the debts of the company:" (1 R. S., tit. 3, part 1, chap. 18, § 5, p. 557.)   No other provision is made by the act incorporating The Columbian Fire Insurance Company of the city of New York; (chap. 480, Laws of 1836); or The Indemnity Fire Insurance Company of the

city of New York; (chap. 136, id.); or The Fifth Ward Fire
Insurance Company of the city of New York; (chap. 137,
id.); or The Atlas Marine Insurance Company of the city of
New York; (chap. 140, id.); or The N. Y. Guardian Insur-
ance Company; (chap. 144, id.); or The Northern Fire Insur-
ance Company; (chap. 173, id.); or The Hamilton Fire
Insurance Company; (chap. 179, id.); or The Eighth Ward
Fire Insurance Company; (chap. 180, id.); or The Merchants'
Marine Insurance Company; (chap. 195, id.); or The Canal
Insurance Company of the city of New York; (chap. 500,
id.); and so in the entire number of acts of incorporation,
some seventeen in number, referred to by the learned counsel
as passed in 1837, and to and including 1841. In only one of
that period, (chap. 130, Laws of 1837), The United States
Insurance Company of the city of New York, do we find a
special provision imposing liability on stockholders in their
private and individual capacity; and there only "to the
extent of their shares in the fund at the time of dissolution
of the corporation, and no further."

In acts of incorporation prior to the revision of the statutes
we find, as a general rule, a provision that in respect of debts
of the corporation contracted before the time fixed by the
act for its dissolution, the persons composing the corporation
at the time of its dissolution shall be responsible, in their
private and individual capacities, to the extent of their
respective shares in the funds of the corporation at that time,
and no further. In acts passed after the revision of the
statutes the clause of special liability seems to have been gen-
erally omitted, and its place supplied by a reference to the
Revised Statutes relating to corporations, where is found the
provision (§ 5) which we have elsewhere cited, and which
establishes the individual liability of the stockholder to the
extent of his shares, in case the whole capital has not been
paid in, and the capital paid in is insufficient to satisfy the
claims of its creditors (p. 660); and this section the revisers,
in their notes, say " is declaratory of a principle of law
which is deemed important should be generally known." In

*Mann* v. *Pentz* (3 Com., 422), construing an act incorpora-
ting a railroad company, and in which there was no provis-
ion for individual liability of the stockholders to creditors,
the court say : " It does not follow, however, that creditors
have no remedy against stockholders who have not paid up
their subscription. The capital stock of a corporation is a
trust fund for the security of creditors ; " and cites the pro-
vision of the Revised Statutes, referred to above, as enacted
in accordance with this principle.

The constitution of 1846 allowed corporations to be
organized under general laws, and, except in special cases
and for municipal purposes, declared that they should not be
created by special act ; (art. 8, § 1.) The first general law
on the subject of insurance corporations passed after the
adoption of the constitution, was that of 1849. It was a
compliance with the constitution, and its object was to pre-
vent the necessity of repeated applications to the Legislature,
by those desirous of engaging in the business of insurance ;
(*Mygatt* v. *N. Y. Protection Ins. Co.*, 21 N. Y., 58) ; and we
lose sight of special charters, and are brought to consider the
changes made in this matter after the act of 1849 by amend-
ment to that act or otherwise. In 1853, (chap. 463, Laws
of that year) an act was passed relating to life and health
insurance companies, which follows, in its general outline and
provisions, the act of 1849 ; but the omissions and alterations
are so significant as to make it a legislative construction of
the act of 1849, and notably the sections I have been con-
sidering. Its general plan for organization is the same ; but
it is more logical in its arrangement, and directs more con-
secutively the steps to be taken for organization and the
transaction of business. It prescribes the number of asso-
ciates, and requires a declaration and charter to be filed with
the comptroller, declaring, among other things, " the amount
of capital to be employed," condensing in one section (3) the
provisions of two sections of the act of 1849 (3 and 10).
Section four makes it the duty of the comptroller to submit
the same to the attorney-general, and if approved by him,

record it in a book ; and return a certified copy to the cor-
porators.. Then, by section five, " the corporators may pro-
ceed to organize the company, and after six weeks public
notice, open books for subscriptions to the capital stock, and
keep them open until *the amount required by this act is sub-
scribed*, and may then proceed to distribute the stock among
the subscribers, and collect in the said capital, and complete
the organization of the company." It should be noticed that
the books are not to be kept open until the amount of capital
stated in the charter is subscribed, but only until the " amount
required by the act " is subscribed ; indicating, as it seems
to us, very plainly, an anticipated difference in the two
amounts. Then section six declares that no company shall
be organized with a less capital than $100,000, for life com-
panies, and for health companies, not less than $50,000 ; and
declares that : No life company shall commence business
until they have deposited with the comptroller of this State
$100,000 in stocks or other securities ; nor any health com-
pany until it has deposited $25,000, secured in like manner.
Section seven declares that when the corporators shall have
fully organized such company, and the said company have
deposited with the comptroller the requisite amount of capi-
tal, he shall furnish the corporation with a certificate of such
deposit, which with a certified copy of the papers previously
required under this act, shall, when filed in the proper clerk's
office, be the authority to commence business and issue poli-
cies ; and the same may be used in evidence for or against
the corporation in all suits. Section eleven declares the
companies formed under the act bodies politic and corporate,
in fact and in name, and subjects them to the provisions of the
Revised Statutes in relation to corporations, as to all matters
not provided for in the act. It will be seen that this act is
consistent and complete ; that the certificate of the attorney-
general is required as to the sufficiency of the papers, as in
the act before us, and the certificate of the comptroller, as
in this act, except that, under the act of 1849, he certifies to
an examination as to whether the company has paid in the

modicum of capital stated, and in that of 1853, he certifies to the actual deposit with him of the amount named ; but in this, no more than in the act of 1849, is any certificate or proof of any kind or form required as to the actual payment in of the capital named in the charter ; nor is there any provision for individual liability on the part of the stockholder, except as it is incorporated into by a reference to the provisions of the Revised Statutes, as is the case in the act of 1849.

The provisions of section twenty-one of the act of 1849, and its modifications, are also of some importance in this connection.　By that section, as it stood in the act of 1849, it was lawful for a mutual company to unite a cash capital, and allow interest upon it, *and a participation in its profits,* and prescribe the liability of the owners thereof to share in the losses of the company ; and such cash capital was made liable as the capital stock of the company, in the payment of its debts.　By the act of 1857, (chap. 28) this cash capital was to be divided into shares, its holders were to receive dividends upon it, and vote at all elections of the company upon their shares.　It declares that " every subscriber to the cash capital aforesaid shall be individually liable, to the extent of his subscription, for the dues of the corporation, until the shares of stock subscribed for by him shall have been paid in cash to the said corporation ; " and by chapter 38 of the same laws, section twenty of the act of 1849 is so amended as to convert the liability of the stockholder, for receiving dividends improperly made, from a " joint and several" into an " individual " liability, and from a liability " to the extent of the dividend made by the company " into a liability " to the extent of the dividend received by him ; " and section twenty-one is so amended as to permit a mutual company organized under the act of 1849, and having complied with the provisions of the fifth and eleventh sections of the act, to unite a cash capital, to any extent not less than $200,000, and allow interest upon it, and " a participation in its profits."　It then declares that no " company shall

avail itself of this provision until such cash capital, to the extent of at least one hundred thousand dollars, shall have been actually paid in," and "the subscribers to such cash capital, whether payable in full or by installments, shall each be individually liable for the debts of the company, to the extent of his individual subscription, unless he shall have paid his subscription in full." This is made applicable to all existing marine mututal insurance companies however organized.

In 1848, the general law relating to railroads was enacted, and amended largely in 1850. In 1848, the general law in relation to manufacturing corporations was passed. Those acts, as well as the one before us, were in compliance with the constitution, and of the same general scope and tendency. We find in the acts of 1848, and in the statute of 1850, a liability on the part of the stockholder, limited and not general; and in the manufacturing law, conditional and not absolute. It was copied almost literally from the Massachusetts act of 1827, and required an action against the corporation within a year after the debt became due, and suit against the stockholder within a year after he ceased to be a member.

We have made this extended examination of different statutes, in an effort to find if it existed, the type of the section in question, or any similar enactment; we can find none. And although we have before us, in the elaborate points of the contestant's counsel, a reference to nearly one hundred statutes, all of which have been examined, there is not one which furnishes a similar provision. We think none can be found.

It is conceded that, upon the literal reading of the section, the testator is not bound. We think it apparent that its limitation is, by its own terms, to the requirements of the eleventh section. So construed, it is reasonable; it limits the risk of its members, and defines the extent of their hazard. Construed as was done in the court below, or as the respondent claims it should be, it becomes unreasonable. Compared

with the provisions of any other statute, it is unprecedented. The testator, it is conceded, paid his subscription fully. This would have satisfied the requirements of most statutes. Under others, he would be required to pay an amount equal to his stock. By none is he made liable, to the extent claimed in this case.

It is conceded that the capital stock actually paid in was over $3,000,000 ; and that the company was duly organized. It thus acquired a corporate capacity. With this a personal liability is wholly inconsistent, and cannot be imposed, except upon the clear direction of the Legislature : (*Myers* v. *Irwin*, 2 S. & R., 731 ; *Harger* v. *McCullough*, 2 Den., 119 ; *Van Sandau* v. *Moore*, 1 Russ. Ch., 458 ; *Gray* v. *Coffin*, 9 Cush., 199 ; *Spear* v. *Grant*, 16 Mass., 9.)  We cannot find that direction in this statute.

It has seemed proper, in view of the novelty of the question, and the earnest and elaborate presentation of the various aspects of it by the learned counsel for the respective parties, to consider it at length ; but the question is a simple one, and if we confine ourselves to the statute, not difficult of solution. What certificate is required, and what shall be its effect ? We hold, with the General Term, that one certficate only is required ; and that certficate is the one specified in the eleventh section.  But we hold also, that the certificate in the case of a stock company is sufficient, if it states that an amount of capital equal to the amount specified in the fifth section of the act has been paid in, and is possessed by it, in money or in such securities as are required by the eighth section.  This certificate was, as the pleadings admit and the evidence shows, duly made and filed.

The plaintiff, therefore, failed to establish his cause of action ; and the judgment appealed from should be reversed, and a new trial ordered.

EARL, J. (dissenting).  This is an action to enforce the personal liability of a stockholder of the Columbian Insurance Company, which was organized under the general insurance

law, chapter 308, of the Laws of 1849, section 19 of which, is as follows : "The trustees and corporators of any company organized under this act, and those entitled to a participation of the profits, shall be jointly and severally liable, until the whole amount of the capital raised by the company shall have been paid in, and a certificate thereof recorded, as hereinbefore provided."

The insurance company was organized in 1857, and continued in business until 1866, when it failed, and passed into the hands of receivers, who subsequently wound up its affairs, its assets paying but a small portion of its liabilities. The capital stock named in its charter was $500,000, which was from time to time increased to $3,500,000, nearly all of which was paid in. Rufus L. Lord, the testator, was a stockholder of the company during the whole time of its existence, and the plaintiff was a creditor of the company under a policy issued to him by the company, and it was to enforce payment of the amount thus due him that this action was commenced.

The act of 1849 was carelessly and loosely framed, and it is difficult to understand the force and meaning of some of its provisions. Some of the language in it is used without legal or grammatical accuracy, and the arguments of learned counsel show that something may at least be plausibly said against any construction we may give it at this time.

We must examine all parts of the act, and considering the objects to be attained, and the general policy of the law, arrive as well as we can at the intent of the Legislature.

Section one provides that any number of persons, not less than thirteen, may form an incorporated company under the act. Section three provides that such persons shall file in the office of the secretary of State, a declaration expressing their intention to form such company, which shall comprise a copy of the charter proposed, and that they shall also publish a notice of such intention. Section four authorizes such persons after filing the declaration and charter, and publishing the notice "to open books for subscription to the

capital stock of the company so intended to be organized, and to keep the same open until the full amount specified in the charter is subscribed." The amount to be subscribed is the full amount of capital stock, and the books are required to be kept open until the amount is subscribed. Section five provides that no stock company shall be organized in the county of New York or Kings with a smaller capital than $150,000 ; nor in any other county, with a smaller capital than $50,000.

Section seven provides that it shall not be lawful for any company organized under the act to transact business, unless possessed of capital or securities as hereinbefore mentioned. This section does not require that the whole amount of the capital stock specified in the charter shall be subscribed or paid in before the company can commence business, but simply that it shall possess the amount of paid up capital mentioned in section five. That is the only prior section which mentions the amount of capital requisite for the formation of companies under the act. It is not the general policy of this State to require all the capital named in the charters of incorporated companies to be subscribed or paid in before business can be commenced. On the contrary it will be seen by an examination of the general laws for the formation of corporations that in nearly all of them, business is authorized to be commenced before the entire capital has been paid in.

Section eleven provides that the charter filed, as before required, shall be examined by the attorney-general, and if found to be according to law, that he shall certify the same to the comptroller, and that the comptroller shall then cause an examination to be made either by himself or by three disinterested persons specially appointed by him for that purpose, who shall certify under oath that an amount equal at least to the amount specified in the fifth section, has been paid in, and is possessed by it, and copies of such certificate are required to be filed in the office of the secretary of State, whose duty it then is to furnish the corporation with a certified copy of the charter and certificates, which upon being

filed in the office of the clerk of the county, in which the corporation. is to be located, shall be its authority to commence business, and issue policies.

It is plain that the examiners thus to be appointed by the comptroller, are not required to certify that the whole of the capital named in the charter has been paid in. If they were, it would have been so stated. The section would then have required them to certify "that the whole amount of the capital specified in the charter has been paid in," instead of requiring them, in language, the different import of which could not have escaped attention, to certify " that an amount, equal at least to the amount specified in the fifth section " has been paid in. No matter what the amount of capital specified in the charter is, whenever at least one hundred and fifty thousand dollars has been paid in, the comptroller can be called upon to make the examination, and if the examiners find that at least that sum has been paid in, and is possessed by the company, the certificate must be given, and the company can then commence business. . I do not perceive how this construction can work any mischief. No one dealing with the company need be deceived as to the amount of its paid up capital. The credit and financial strength of a company depends, not upon the nominal amount of its capital, but upon the amount of the paid up capital possessed by it. The requirements of law, and of public policy are satisfied if such a company possesses the amount of capital which the law-makers have deemed safe for the commencement of business. And this was the construction put upon this section, by the insurance company, and by the comptroller. After one hundred and fifty thousand dollars of its capital had been paid in, it applied to the comptroller, and he. appointed the three examiners, and they examined the assets of the company and made a certificate that " the sum of one hundred and fifty thousand dollars in money, being part of the capital of said company, has been paid in, and is now possessed" by the company, and that certificate was filed, and is the only one which was ever filed.

Notwithstanding the filing of this certificate, such a company can continue to take subscriptions and collect them until the whole amount of the capital stock mentioned in its charter has been subscribed and paid in, and no further certificate is required to be filed, except for a purpose I will hereafter mention.

Section thirteen requires the officers of such a company, annually to prepare and deposit in the office of the comptroller, and in the office of the clerk of the county in which the company is located, and in every other county in which the company shall have an agency, and to publish in at least one newspaper published in such county, a statement showing its business during the past year, and its financial condition; and also showing the securities representing the capital stock, and their condition, and a list of the stockholders, together with the amount of their respective shares: and then it is provided that if upon examination of such statement, it shall appear to the comptroller that " the losses and expenses of any stock company during the year have exceeded the premiums, and in consequence thereof the capital of such company has become deficient, or from any other cause has become impaired to the extent of twenty-five per cent, it shall be the duty of the said comptroller to direct the officers of any such company within sixty days to proceed to wind up its business, unless within that time the stockholders thereof shall pay in the amount of such deficiency." But for the next clause, the meaning of this section would be quite clear. It is only when the capital has become impaired to the extent of twenty-five per cent by the excess of losses and expenses over premiums received, or from some other cause, that the comptroller can require the impairment to be made up. What is here meant is the cash capital, not the nominal capital. The nominal capital could not become impaired. That would remain the same. The statement would show the amount of the cash capital, and its impairment, if any, and that could be required to be made up. The comptroller is not authorized to make his requisi-

tion simply because the amount of capital paid in is less than the amount specified in the charter.

But the next clause is somewhat uncertain, and reads thus : "Any company receiving such requisition from the comptroller, shall forthwith call upon its stockholders for such amounts, as will make its capital equal to the amount fixed by the charter." It cannot be inferred from this clause that the Legislature intended that the entire capital specified in the charter must be paid in before a company can commence business. As shown above, when so much as $150,000 of its capital has been paid in, and the requisite certificates have been filed, a company can commence business, and then so long as its cash capital has not become impaired to the extent named, it may continue business, and the comptroller cannot interfere with it. But reading the last clause literally, when its capital has become thus impaired, and the comptroller makes his requisition to repair it, then the stockholders of the company must make up the capital to the amount specified in the charter. But this literal reading should not be adopted. It leads to a construction not in harmony with other provisions in the act. I think this clause in its operation must be confined to a case where the entire capital had been paid in, and had become impaired. It was clearly the intention to require only that the impairment of the cash capital should be made up. The law having required that a safe amount of cash capital should be paid in, and kept whole, did not concern itself, and had no reason to concern itself about the nominal capital.

We are now prepared to take up section nineteen upon the construction of which the rights of these parties depend. It is contended on the part of the defendants that the liability there imposed was for debts contracted in some way before the complete organization of the company, and before it could transact any corporate business. Such a provision would be quite extraordinary. It is not to be found in any special charter, so far as I can discover, nor in any of the general laws for the organization of corporations. If this

be the true construction, I doubt not that it is the first time that the Legislature has attempted to create a joint and several liability for expenses incurred by a proposed company, before its organization. Such expenses are generally small, and are usually incurred by or upon the credit of the promoters. The persons engaged in the joint enterprise are jointly liable, and this common law liability affords all the protection to creditors that could be desired. The word "trustees" as used here, means directors, and the word "corporators" means members of the corporation. These two words commonly have such meaning when used in relation to corporations. The word "trustees" is used in the sense of directors in other parts of this act, and while the word "corporators" may have a different meaning in some of the sections, that circumstance can have but little weight, as language is used in the act with little care or precision. Persons "entitled to a participation of the profits," are made liable, and who are they? There can be no profits until the company is formed, and this language was doubtless intended to impose a liability upon persons not nominally stockholders, and yet in some way entitled as the real parties in interest to the dividends upon stock. We may suppose that the intention was to reach a class of persons who might hold stock in the name of others for the purpose of escaping the personal liability. Hence this clause could have but little meaning or purpose, unless it was to operate upon the persons named after the corporation was formed, and had commenced business. It could only then commence to create liabilities, and creditors would then for the first time need the benefit of such a provision. And this construction is in harmony with the policy of this State, in the constitution of which it is provided that "dues from corporations shall be secured by such individual liability of the corporators, and others means as may be prescribed by law." (Art. 8, § 2.) And the same kind of personal liability, though usually not so extensive, is found in all the general laws for the formation of corporations, passed since 1846. It will be seen that the word "corporators"

is used in the same sense in the constitution, as in this section.

The last clause of section 13 reads as follows : " Any ·transfer of the stock of any stock (company) organized under this act, shall not release the party making the transfer, from his liability for losses which may have accrued previous to the transfer." And this shows also that the personal liability imposed by the act, is one arising after organization.

It is said in the section that this personal liability shall continue " until the whole amount of the capital raised by the company shall have been paid in, and a certificate thereof recorded as hereinbefore provided." What is meant by the word " raised ? " It is not entirely clear, but I think the whole amount "to be raised " was meant. In common language, a corporation may be said to have raised the whole amount of its capital, when it has procured subscriptions for the whole thereof, and when such subscriptions have been paid, then the whole amount has been raised and paid in. What certificate is meant by the last clause of the section ? Clearly the certificate mentioned in the eleventh section. No other certificate is before mentioned. Upon this the defendants base an argument, that the personal liability was not to continue after organization, as that certificate was to be made and filed before organization. But I cannot yield to the force of this argument. A company may have its entire nominal capital subscribed and paid in, and then the certificate will show that fact, and there will be no personal liability after organization. If the directors and stockholders wish to escape continued personal liability, they must take that course, and procure and file such a certificate. But as I have shown above, the company can be organized and commence business before the entire amount of capital has been paid in, and if that course is taken, then the personal liability attaches and continues. But it is said that there is no provision for a further certificate, and that if this construction be given, the personal liability could never end. But suppose this be so, the par-

ties interested have placed themselves in this dilemma. They chose to organize and commence business before the whole amount of their capital was paid in, and they must take the consequences which the statute imposes. But there can be a further certificate. The comptroller can be required to make a further examination, and give a further certificate which may be made and filed as required in section eleven, and then the personal liability will end.

This liability is not in the nature of a penalty for not filing the certificate. The statute simply takes away from the corporators the protection which the incorporation would otherwise give them, and makes them liable as partners except that the liability is several as well as joint. (*Corning* v. *McCullough*, 1 Comst., 47; *Harger* v. *McCullough*, 2 Denio, 119; *Story* v. *Furman*, 25 N. Y., 214.)

This action was not therefore well defended, and the judgment must be affirmed.

CHURCH, Ch. J., RAPALLO and ANDREWS, JJ., concur with DANFORTH, J.; FOLGER and MILLER, JJ., concur with EARL, J.

Judgment reversed.