THOMAS S. SUTHERLAND, Appellant, *v.* JOHN J. OLCOTT AND DUDLEY OLCOTT, AS EXECUTORS, ETC., OF THOMAS W. OLCOTT, DECEASED, RESPONDENTS.

*Manufacturing corporation — fixing the amount of its capital stock — individual liability of its stockholders — failure of the county clerk to record certificate — a creditor by suing on notes bars himself from resorting to the original consideration.*

Chapter 401 of 1867, creating a manufacturing corporation, provided that its capital stock should be $300,000, and authorized it "to increase the same from time to time as its business may require, and a majority of the directors should so determine, to a sum not exceeding one million dollars." This act made the stockholders individually liable to the creditors of the company to an amount equal to the amount of stock held by them. September 11, 1872, a resolution was unanimously adopted by the directors increasing the capital stock of the company to $600,000. Prior to May 10, 1875, subscriptions for this stock to the amount of $489,500 had been procured and fully paid in. Chapter 203 of 1873, amending the act of 1867, changed the name of the company and released the stockholders from liability after "the whole amount of the capital stock fixed and limited by such company shall have been paid in." May 10, 1875, the directors resolved that the capital stock of the company "be fixed and limited at $489,500," and that a certificate to that effect be duly prepared and filed in the county clerk's office. Such a certificate was so prepared and filed in July, 1875.

*Held,* that the resolution of May 10, 1875, was a lawful and valid one.

That it fixed and limited the capital stock at the amount therein named.

*Held,* further, that although the general manufacturing act (chap. 40 of 1848) required the president and a majority of the trustees to sign a certificate showing that the capital stock was paid in, and to "record the same in the office of the county clerk," yet that the filing of the said certificate relieved the stockholders from all personal liability, and that the failure of the county clerk to properly record the same did not affect or prejudice their rights.

The plaintiff recovered a judgment against the company upon notes given in October, 1875, for services alleged to have been rendered prior to the filing of the certificate. In this action, brought by him to enforce an alleged individual liability of the stockholders:

*Held,* that the recovery of the judgment upon the notes estopped him from resorting to the original consideration in order to charge the stockholders with the payment of the debt.

APPEAL from a judgment in favor of the defendants, entered upon the trial of this action by the court without a jury.

The action was brought by the plaintiff against the defendants'·

testator to recover a debt owing to the plaintiff from The Olcott Iron Manufacturing Company. The plaintiff had recovered a judgment against the company upon notes given by it to him to secure the same indebtedness in October, 1875, for services alleged to have been rendered to it in pursuance of a contract made in May of that year.

The company was incorporated by chapter 401 of 1867. The second section of that act provided that : " The capital stock of said company shall be three hundred thousand dollars, with power to said company to increase the same from time to time as its business may require, and a majority of the directors for the time being should so determine, to a sum not exceeding one million dollars."

Section 6 of the act declared : " The stockholders of the company incorporated under this act shall be severally individually liable to the creditors of the company in which they are stockholders to an amount equal to the amount of stock held by them, respectively, for all acts and contracts made by such company. The corporation hereby created is subject to all the restrictions and liabilities contained in the eighteenth chapter of the first part of the Revised Statutes."

On September 11, 1872, at a meeting of the directors of the corporation, a resolution was adopted increasing the capital stock to $600,000. Efforts were made to raise the said $600,000, and some subscriptions obtained and the money was paid in, but no amount over or above $489,500 was ever subscribed or paid in ; and all that was subscribed was fully paid in.

Afterwards, and by chapter 203 of the Laws of 1873, it was enacted : " The company now known as The Albany Iron Manufacturing Company, incorporated by virtue of chapter four hundred and one of Laws of 1867, shall hereafter be known and distinguished as The Olcott Iron Manufacturing Company, and the stockholders thereof shall be jointly and severally individually liable for all debts that may be due and owing to all their laborers, servants and apprentices for services performed for such company, and shall be severally individually liable to the other creditors of the company to an amount equal to the amount of stock held by them, respectively, for all debts and contracts made by such company until the whole amount of capital stock fixed and limited by such company shall have been paid in,

such liability being in accordance with the provisions of sections ten and eighteen of the act entitled 'An act to authorize the formation of corporations for manufacturing, mining, mechanical or chemical purposes, passed February 17, 1848;' and the provisions of section twenty-four of said act shall also apply to the stockholders of said company."

The second section of the act of 1873, just referred to, also repealed "all acts or parts of acts inconsistent with the provisions" thereof.

On the 10th day of May, 1875, the directors at a meeting passed the following preamble and resolution:

"*Whereas*, The stockholders at a meeting held May 8, 1875, unanimously resolved that the capital stock of the company be fixed and limited in accordance with the act of incorporation at $489,500, and a certificate thereof filed in the office of the county clerk, therefore,

"*Resolved*, That the capital stock of The Albany Iron Manufacturing Company be fixed and limited at $489,500, and that a certificate to that effect be properly prepared and sworn and filed in the office of the county clerk, as required by the general manufacturing law.

"*Resolved*, That any and all resolutions heretofore adopted fixing or limiting the capital stock of this company be and hereby are rescinded."

A certificate of paid-up capital was duly made and executed as required by law and filed for record in the clerk's office of Albany county on the 15th day of July, 1875, and before the incurring of the indebtedness by the corporation to the plaintiff in this action.

According to the practice of the county clerk's office the certificate, duly executed and acknowledged, was placed in a box with others of a similar character, and when a sufficient number had accumulated to make a volume they were bound firmly together.

The plaintiff claimed that the resolution fixing the capital stock at $489,500 instead of $600,000 was, in effect, a reduction of the capital stock and unlawful.

*Olin A. Martin*, for the appellant.

*S. O. Shepard* and *G. L. Stedman*, for the respondents

BOARDMAN, J.:

We concur with the learned justice who tried this action that the plaintiff is not entitled to recover. The attempt of the Albany Iron Manufacturing Company to increase its capital stock to $600,000 was a failure. It was never in fact increased to such amount nor was any amount in excess of $489,500 ever subscribed for. It having become evident that such excess could not be procured, the attempt was abandoned and the stockholders and directors of the company, in May, 1875, took such action as rescinded the resolution to increase the stock to $600,000 and "fixed and limited" (in the language of the act of 1873, chap. 203) the capital stock at $489,500, which amount was about that time fully paid up. By the act of 1873 the Albany Iron Manufacturing Company became the Olcott Iron Manufacturing Company, and on the 12th of July, 1875, the latter company made its certificate, fixing and limiting the capital stock at $489,500, and further certifying that said sum had been fully paid up and certificates for full paid stock had been issued and delivered to the stockholders of said company, naming them and the number of shares held by each. This certificate was filed on the next day in the proper clerk's office.

Under the act of 1867 (chap. 401) the old company had the power to increase its capital from $300,000 to $1,000,000. The act of 1873 gave the new company the power to fix and limit its capital stock. It seems to have been a just exercise of that power in naming a sum already subscribed for or capable of being realized and excluding stock not subscribed for and not attainable. The reduction of the capital stock from the nominal sum of $600,000 to $489,500 was not unlawful under the eighteenth chapter of part 1, 1 Revised Statutes (Eds. ed.), 559, *601. It was not a division, withdrawal or payment to stockholders of any part of its capital stock nor was it a reduction of its actual stock. The excess rejected was not and never had been any part of the actual capital stock of either company. Its rejection took away no assets of the company to the possible detriment of its creditors, because it disposed of nothing which the company owned and possessed. Hence we think the capital stock was legally fixed at $489,500.

Under the Laws of 1848 (chap. 40, §§ 10 and 11) the liabilities of stockholders for the debts of the company to an amount equal to the

amount of stock held by them severally exist until the whole capital stock, *fixed and limited* by the company, shall be paid in. And the president and trustees shall, within thirty days after the last installment of capital stock shall have been paid in, file a certificate of the amount of capital stock so fixed and paid in, which certificate shall be signed by them and recorded in the proper clerk's office.

The evidence does not show when the last payment was made upon the stock, making it fully paid up. Hence we cannot say that the certificate required to be made and recorded within thirty days thereafter was not so made and filed in time. It is quite possible that the stock was not fully paid up until July, 1875, in which case the certificate was made and deposited in the clerk's office in due time. (*Chase* v. *Lord*, 6 Abb. N. C., 258, n.)

The failure of the clerk to do his duty by making a record of the certificate cannot prejudice stockholders or trustees who have done all that the law requires of them or that they have the power to do. (*Boynton* v. *Hatch*, 47 N. Y., 225.)

The plaintiff recovered judgment upon the note given October 25, 1875, months after the fixing of the amount of stock and the making and filing of certificate of amount and its payment in full. At that time there was no liability of stockholders under the law of 1848 by reason that the stock was not fully paid up. The judgment against the corporation having been recovered upon these notes the present action against the stockholders must be restricted to the claim embraced in the judgment. The original consideration of the note cannot now be resorted to for the purpose of ante-dating the filing of the certificate July 13, 1875. Besides the evidence of such original consideration is too obscure and uncertain to form the basis of a claim prior to July 13, 1875, if otherwise proper.

We think the judgment is right and should be affirmed, with costs.

BOCKES, J., concurred; LEARNED, P. J., not acting.

Judgment affirmed, with costs.