*615
 
 Peckham, J.
 

 The members of the court are not agreed upon the question of the validity of the contract in this case, and, therefore, no opinion thereon is expressed. A majority of the court, however, is of the opinion that the judgment herein must be reversed upon grounds which So not touch upon its validity, and I will briefly state what they are.
 

 The judgment provides for the recovery by the plaintiff company of the full amount of the interest on its bonded indebtedness which had accrued prior to the entry of such judgment, and of course long after the commencement of the action. The action was thus treated as an equitable one, in "which relief might be granted up to the time of the entry of the decree. As the plaintiff had been unable to pay any portion of the interest due on its bonds for some time prior to the entry of such decree, the full amount of that interest was therein decreed to be paid by the defendant to the plaintiff.
 

 The theory of the recovery was that the defendant having promised to advance the money necessary to make good any deficiencies in the net earnings of the plaintiff company to pay the interest on its bonded debt, therefore the defendant must make such advances, and judgment was given decreeing their payment to the plaintiff. This is substantially a decree for the specific performance of a simple contract to advance money to the plaintiff company. Generally speaking, equity does not decree a specific performance of such a contract.
 

 This case is sought to be distinguished from this general rule by the fact that the defendant under this contract, while bound to make the advances, even if there were an entire failure of net earnings, had no right under it to claim repayment of such advances until net earnings should be made, and that the repayment must proceed from such fund. It is urged that this is one of the chances taken by the defendant when it agreed to make such advances, and that the consideration for such agreement to advance and to rely for repayment upon the future existence of a fund arising from net earnings was to be sought in the other part of the agreement by which the defendant was to reap the advantage of the so-called traffic arrangement between the two companies. Under such circumstances, it is claimed that the case is taken out of the general rule as to specific performance in equity, and that the defendant ought to be decreed to make the necessary advances to pay the interest on the bonds of plaintiff company, without any pre^f of damage to the company, so long as the defendant by its agreement has bound itself so to do, and to look for repayment for such advances only from a fund which does not now exist, and which, so far as present indications would tend, will never exist again.
 

 But, even assuming the fact contended for would alter the rule in equity, I am not able to so construe this agreement as to admit that the defendant has no right to demand repayment of its advances except from the fund created by the net earnings of the plaintiff company. By the terms of the agreement it is true that security for the repayment of the advances was given Ly provid
 
 *616
 
 ing for a first charge in favor of defendant on such net earnings, next after the payment of the accruing interest upon its bonded indebtedness, but the agreement also provided as a further security to defendant for such repayment for a first lien upon the property and franchises of the railroad company.
 

 The result was to give the defendant all the security the plaintiff company could give for the repayment of the advances made by it, but because all the security possible was given, including a specific charge on a special fund, it by no means follows that the defendant should have no right to attempt to enforce payment of the advances until the special fund existed upon which the defendant was given a specific lien. Nothing in the agreement, that I can see, would prevent the defendant from foreclosing the lien upon the property and franchises of the plaintiff company (subject, of course, to the first mortgage), at any time it should see fit to do so, in order, if possible, to secure repayment of its advances, or, failing in that, then to obtain possession of the road at a sale thereof under such foreclosure. Or defendant might proceed in an ordinary action at law to obtain a judgment for the amount of its advances. The fact that no net earnings had been made, and that there was no fund arising therefrom out of which to pay the advances, would constitute no defense to either action. There was no time stated in the agreement for the repayment of such advances, and nothing is contained therein that I can see which makes it necessary for any particular time to elapse, or for any particular thing to happen, after the making of the advances, before their repayment becomes due. From an attentive reading of the case, it may be fairly assumed that both companies supposed there would be net earnings, and that a failure to realize them at any particular time would be only temporary, and hence a provision for a first charge thereon, as made in the agreement, was not a mere empty provision or one which either party supposed would never be capable of enforcement. But that does not alter the character of the obligation which the plaintiff company assumed, and that obligation was, in strictness, I think, an obligation to repay the advances immediately or upon demand.
 
 Thompson
 
 v.
 
 Ketcham,
 
 8 Johns., 190 ;
 
 Purdy
 
 v. Philips, 11 N. Y., 406. These authorities show that where no time of payment is specified in a contract for the payment of money, it is payable immediately. The law is so well settled on that point as scarcely to warrant the citation of authorities. There is nothing in the contract in question from which a different time of payment can be asserted, and none can properly be reasoned out.
 

 We may suppose that neither parly thought it probable that a claim for a repayment of any advance would be made at once, or' shortly after such advance was made, but wo are dealing with the strict legal right of the defendant under the contract, and that right is not altered or diminished by the expectations or beliefs of the parties.
 

 The whole substance of the agreement, so far as the advances are concerned, is that an obligation was assumed by the defendant to advance money enough to make up any deficiency in the
 
 *617
 
 net earnings to pay the interest on the bonded indebtedness of the plaintiff company, and that company was placed thereby under an equal obligation to repay to the defendant the amount of such advances upon demand, or, in other words, immediately. Such an obligation is not the subject of a decree for a specific performance in equity. If there be any remedy at all, that remedy is at law, by a recovery of damages.
 
 Carter
 
 v.
 
 United Ins. Co.,
 
 1 Johns. Ch., 463
 
 ; Sichel
 
 v.
 
 Mosenthal,
 
 30 Beav., 371;
 
 Crampton
 
 v.
 
 Varna Railway Co.,
 
 L. R., 7 Ch. App. Cas., 562;
 
 Pierce
 
 v.
 
 Plumb,
 
 74 Ill., 326, 330, 331.
 

 Of course, in the action at law there must be proof in the case showing in some form and to some extent the amount of the damages that the plaintiff has sustained by the defendant’s breach of his agreement. And it is equally plain that it must be a rare case, indeed, where it can be said that a person has sustained any damages by the refusal of another to advance money which he has agreed to advance, where the person to whom it is to be advanced is by the agreement under a valid obligation to pay it back immediately. Equity, at all events, never enforces such an agreement, and in a court of law there must be proof of damages. But we may assume, without deciding, that the defendant, in case it advanced the money, would not have the legal right to demand an immediate repayment, and consequently would not have the right to maintain an action to enforce it. although not compelled to await the existence of net earnings before claiming such repayment. There yet remains an unanswerable objection to the maintenance of this action, and that objection lies in the fact that the plaintiff company is, and for some time prior to the commencement of this action had been, hopelessly insolvent, and the payment of the interest on its bonds by the defendant would be neither more nor less than a pure gift, as the plaintiff could not repay it, and the security for such repayment proves to be en-, tirely worthless. This is a condition of things not contemplated by either party at the time of the execution of the contract. It is claimed that the insolvency of the plaintiff company was one of the facts which, he contract provided for, as the plaintiff company would be insolvent if it could not earn enough to pay its operating expenses and the interest mentioned, and that it was in just such case that the contract provided for an advance by the defendant to the plaintiff company.
 

 But this is clearly not the correct construction. The contract was made March 12, 1883. The plaintiff company was chartered in 1881, and in the year 1882 it had earned more than enough to pay operating expenses and interest on its bonds and a dividend to its shareholders, besides leaving a surplus in its treasury. It never could have been contemplated that the company would permanently cease to earn enough even to pay operating expenses, and it cannot be supposed that it was ever in the thoughts of the officers of either of the two companies that the time would speedily come when such a contingency would arise and seemingly become a fixed financial condition. The obligation to continually pay
 
 *618
 
 the interest on the bonds of a company which could not earn enough to pay its own operating expenses is one which we cannot, in the light of the proved facts in this case, credit the plaintiff company with obtaining, or charge'the defendant with assuming. The consideration which the defendant would obtain by reason thereof is grossly insufficient to predicate the voluntary assump- " tian by it of any such obligation. I think it may be properly assumed that the obligation to advance was founded upon a belief that in the future it might be with the plaintiff company, as with others, owing to temporary embarrassments, or the working of unforeseen though temporary causes, a contingency might arise by which a particular payment of interest could not be made because of an insufficiency of net earnings from which to pay it, and in that event the defendant was to advance enough to make up such deficiency, and this advance was to be secured by the pledge of the future nét earnings. It was clearly contemplated and supposed that there would be such earnings, although their existence was not a condition precedent to the right to claim repayment for such advances. A perusal of the whole agreement leaves upon my mind a clear impression that it was assumed there would generally be sufficient net earnings to pay the interest on the bonds of the plaintiff company, but that the contingency might, “from time to time,” arise when there would be a temporary deficiency in such net earnings to pay such interest, and in that event the defendant was bound to advance enough to make such payment, taking as security for a repayment thereof the first charge upon the net earnings fund after the payment of the interest and a first lien on the property and franchises of the corporation after the mortgage bonds. This, of course, contemplates that there would be such surplus net earnings, and not that there would be a continuous annual deficit therein, together with a deficiency in the earnings, to an extent rendering it impossible to pay the ordinary operating expenses of the railroad.
 

 Events subsequent to the making of the agreement have actually placed the plaintiff company in a position where, for a long time, its earnings have scarcely, if at all, equalled its operating expenses, and where, if the defendant were to advance'a sum sufficient to pay the interest, or any part thereof, on the plaintiff company’s bonds, it would find tlia-t the security for repayment provided for by the agreement had become, contrary to the expectations of both parties, of no value. To enforce the specific performance of such a contract would work an unexpected hardship upon the defendant and would, in truth, do it great injustice. A contingency has happened in the case not within the contemplation of either of the parties to the contract, to wit, the continuous failure of the plaintiff company to earn money enough to pay all of its operating expenses, and hence the failure of the plaintiff company to realize net earnings out of which to pay the .interest, or some portion thereof, on its bonds, has been not only partial, but complete; not “from time to timo ” only, but all the time, and hence it would be oppressive for a court of equity to enforce performance. Under such circumstances no specific performance
 
 *619
 
 will be decreed.
 
 Trustees of Columbia College
 
 v. Thacher, 87 N. Y., 311, and cases cited.
 

 Thus far I have considered this case as if it were an action in equity asking for a decree for the specific performance of the agreement. As thus considered, I think the action, for the reaso is already stated, cannot be sustained. But it may be urged that an accounting was necessary between the parties, and hence a court of equity had jurisdiction to take it, and having obtained jurisdiction for one purpose, would retain it for all and give final relief. The answer is that no accounting whatever is necessary. The plaintiff simply alleged that there had been no net earnings and therefore asked that the full amount of the interest on its bonds should be paid to it by the defendant company.
 

 The fact of there being no net earnings was a fact to be proved like any other fact. To make such proof it might be necessary to examine the books of the plaintiff company for the purpose of discovering what the gross earnings had been and how such gross earnings had been paid out But that involved no “accounting” between these parties, as such term is used in speaking of the jurisdiction of a court of equity over the matter of accounts.
 

 If, however, the action be regarded as one at law, seeking to recover money damages for a violation of the agreement by the defendant, I am of the opinion there is a fatal defect in the plaintiff’s case. In the first place, no facts are pleaded showing any damages sustained by the plaintiff company, consequent upon defendant’s alleged violation of the agreement, and in tlie next place no facts are proved which show that the plaintiff company has in truth sustained any damages.
 

 It would seem that the whole agreement taken together shows that whatever obligation the defendant might rest under to make the advances to cover up the deficiencies alluded to, yet if this obligation were performed by defendant, and the moneys were in fact advanced, an equal- obligation would at once spring up on the part of the plaintiff company to repay such money immediately, or as soon as the defendant should ask for its repayment. However this may be, certainly no damages have been proved by the insolvent company plaintiff arising from the failure of defendant to pay this interest.
 

 The claim that the plaintiff company has in all things performed its part of the contract, and it would therefore be inequitable to permit defendant to repudiate its obligations, does not meet the obj ;ction of the unforeseen insolvency of the plaintiff company. The facts of the case do not bring the plaintiff within the principle of a part performance by it, and a resulting liability on defen 1 ant’s part to specifically perform for the future.
 

 While not necessary to the determination of this case upon the grounds already discussed, the argument that the plaintiff company has lost the right to claim performance by the defendant because the corporate control of plaintiff company by defendant provided for in the contract has been lost by the appointment of a receiver, does not lack plausibility. If it have not lost the right on that ground, we think it plain that the right has been lost by
 
 *620
 
 this unexpected contingency, the insolvency of the plaintiff company.
 

 For these reasons, we are of the opinion that the judgment herein should be reversed and a new trial ordered, with costs to abide the event.
 

 Andrews, Earl, Gray and O’Brien, JJ., concur; Ruger, Gh. J., and Finch, J., dissent.