notes for all but $13,000, omitting the cost of collection and the small surplus paid over to the plaintiff. The assignment of those accounts, the proceeds of which were applied to the discharge of Jacobs' debts to third parties, did not constitute a preference, under the bankruptcy law. Tiffany v. Boatman's Institution, 18 Wall. 375, 21 L. Ed. 868; Matter of Cobb (D. C.) 96 Fed. 821.

The plaintiff's attempt to recover the amount collected by the bank on the theory that the whole transaction was void under the state law, as had with an intent to hinder, delay, and defraud creditors, fails for insufficient proof.

Let there be judgment for the plaintiff to the extent indicated.

Judgment for plaintiff.

(48 Misc. Rep. 258)

MARKLOVE v. UTICA, C. & B. R. CO. et al.

(Supreme Court, Special Term, Oneida County. September, 1905.)

1. RAILROADS—PUBLIC AID—CONTRACTS—CONSTRUCTION.

A city issued bonds for the benefit of a railroad company, and the company issued to the city an equal amount of its stock, which it guarantied should yield an annual dividend of 5 per cent., to be secured by the rent under a lease of the property of the company to another company. The lessee guarantied to the lessor the payment of dividends. *Held*, that the contracts and lease should be construed as constituting only one contract.

2. SAME—GUARANTY OF DIVIDENDS—VALIDITY.

Where a city issued bonds for the benefit of a railroad company, which issued to the city stock equal in amount to the bonds, and agreed that the stock should yield an income of 5 per cent., which agreement was to be secured by rentals under a lease of the road to another company, the contract guarantying 5 per cent. income was within the power of the railroad company.

3. MUNICIPAL CORPORATIONS—CONTRACTS—PRESUMPTION OF REGULARITY.

Where a contract, by which a city issued bonds for the benefit of a railroad company, and the latter issued stock to the city and guarantied a certain income thereon, was executed and acted upon for 30 years, it was presumable that the municipal authorities did their duty in accepting the contract and requiring the observance of the statutory conditions essential to its validity.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 683; vol. 20, Cent. Dig. Evidence, § 94; vol. 12, Cent. Dig. Corporations, § 1788.]

4. RAILROADS—PUBLIC AID—CONTRACTS—CONSTRUCTION BY PARTIES.

A city issued bonds for the benefit of a railroad company, which issued stock to the city to the amount of the bonds, and contracted that the stock should pay a certain annual dividend; the contract being secured by rentals under a lease of the road to another railroad company. This latter company guarantied the payment of the dividends at the rate fixed. *Held*, that this guaranty was valid, and, having been acted upon for more than 30 years, furnished a construction of the contract by the parties, under which the city, though not a party to the contract, was entitled to enforce it.

5. SAME—STOCK—GUARANTY OF DIVIDENDS—RIGHTS OF PURCHASER OF STOCK.

A city issued bonds for the benefit of a railroad company, and the company issued to the city stock equal to the amount of the bonds, guarantying that the stock should yield an annual dividend equal to the amount of the stock. Laws 1869, p. 2307, c. 907, § 6, authorizing the bonding,

contemplated a sale by the city of stock issued to it. *Held*, that on a sale of the stock by the city the transferee was entitled to the benefit of the contract guarantying the dividend.

Action by Clifford Marklove against the Utica, Clinton & Binghamton Railroad Company and others. Judgment for plaintiff.

Kernan & Kernan, for plaintiff.

Thos. S. Jones, for defendant Utica, Clinton & Binghamton R. Co.

Wm. Townsend, for defendant city of Utica.

Opdyke, Ladd & Bristow, for defendant Delaware & Hudson Co.

ROGERS, J. On the 10th of July, 1871, the city of Utica became the owner of certificate No. 554, for 2,000 shares, par value of $100 per share, of the stock of the defendant Utica, Clinton & Binghamton Railroad Company, in consideration of the issue, for the benefit of said company, of $200,000 of bonds, dated July 1, 1871, and due July 1, 1901; and in further consideration that "stock thus taken should yield an annual interest of five per cent."; the 5 per cent., annually, to be secured by and out of rentals to be paid under a proposed lease of the road to the New York & Oswego Midland Railroad Company, guarantied by the Delaware & Hudson Canal Company, since named Delaware & Hudson Company. A communication in writing, addressed to a committee of the common council—apparently in January, 1871—was made by O. S. Williams, Isaac Maynard, and A. M. Mills, "executive committee" of the Utica, Clinton & Binghamton Railroad Company, agreeing that there should be set apart from rentals and paid to the city $5,000 semiannually as "interest." This letter or agreement was ratified by the board of directors January 31, 1871.

January 12, 1871, the stockholders adopted the following resolution:

"Resolved, that the stockholders of the Utica, Clinton & Binghamton Railroad Company this day in annual meeting assembled approve of the action of the board of directors, in making an agreement for the leasing of the road of said company to the New York & Oswego Midland Railroad Company, with the guaranty of the Delaware & Hudson Canal Company; and they do hereby request said board to go forward and complete the same according to the plan published by the executive committee in the Utica daily papers of the date of December 30th, 1870.

"The ayes and nays were called on the resolution, and it was declared unanimously carried."

These bonds were issued on the consent of the taxpayers of the city of Utica, pursuant to chapter 907, p. 2303, Laws 1869, chapter 507, p. 1148, Laws 1870, and chapter 925, p. 2115, Laws 1871.

The plan of a lease from the Utica, Clinton & Binghamton Company to the New York & Oswego Company, with rentals assigned to the city of Utica, and to be guarantied by the Delaware & Hudson Company, was suggested by Judge Denio, whose manuscript opinion thereon, bearing date February 8, 1871, was submitted at the trial of this action. The opinion seems to have been submitted to said "executive committee," who wrote a committee of the common council that the recommendations met their approval, and saying, "We undertake that they shall be complied with in every particular." The purpose was to aid in the construction of the Utica, Clinton & Binghamton road by obtaining the benefit of the credit of the city of Utica, and at the same time securing

to the city a partial return for its expenditure in behalf of the company. The proceeding seems to have been assented to by the taxpayers of the city, not only after the foregoing assurances, but in addition there was an address published in the local press asking for help, with an assertion that the scheme was "no uncertain venture," and that the city's "stock will receive five per cent." On the 14th day of June, 1871, the Utica, Clinton & Binghamton Company made and delivered to the city of Utica another agreement, by which, in consideration of the subscription for said 2,000 shares of stock, of the par value of $100 each, and the payment to be made therefor in cash, or the bonds of the city to that amount, it assigned and transferred, absolutely and forever, to the city a one-seventh part of the annual rental secured to it by an agreement with the New York, Oswego & Midland Company, bearing date December 15, 1870, providing for the payment of a rental of $70,000 annually, and authorizing said New York, Oswego & Midland Company and said Delaware & Hudson Company, also named in said agreement, to receive $5,000 of said rental semiannually, and to pay over the same to the treasurer of the city of Utica, or other proper officer or agent of said city, which agreement was assented to by the said New York, Oswego & Midland Company, by an instrument in writing, dated June 28, 1871, and thereupon the defendant Delaware & Hudson Company, by an instrument in writing, dated July 5, 1871, adopted and acknowledged said assignment, and did "guaranty the semiannual payments of $5,000 each to the city of Utica, in place of the Utica, Clinton & Binghamton Company, and upon the same terms and conditions as are provided for in said annexed agreement." January 15, 1872, a lease was made with the Utica, Clinton & Binghamton Company to the New York, Oswego & Midland Company, to which the Delaware & Hudson Company was a party, providing for an annual rental of $70,000, $10,000 of which was to be paid in two equal semiannual installments to the city of Utica; the Delaware & Hudson Company undertaking to make such payment on default of the said lessee. The common council of the city of Utica, by resolution, approved and accepted said agreement and guaranty.

On the 4th of December, 1889—the New York, Oswego & Midland Company apparently having dropped out—a new lease was made of the road by the Utica, Clinton & Binghamton Company to the Delaware & Hudson Company, for and during the "full end and term of the (its) charter" at a rental of $61,000 per year. This lease, among other things, contained the following:

"The party of the second part further agrees to guaranty, during the continuance of this lease, the following dividends upon the capital stocks of the Utica, Clinton & Binghamton Railroad Company, the same to be paid in semiannual installments, as hereinbefore set forth, viz.: Upon the stock held by the city of Utica, not exceeding $200,000, dividends at the rate of five per cent. per annum; upon the remainder of the capital stock, not exceeding $650,000, dividends at the rate of one and three-fourths per cent. per annum. The sums payable for interest and dividends, upon such guaranty, constitute a part of the rental of the demised premises."

The lease further provided that the Oneida National Bank, for which the defendant the Utica City National Bank has since been substituted, should be the financial agent of the Utica, Clinton & Binghamton Company, in which should be deposited the part of the rent "necessary to

pay the dividends upon the stock guarantied"; also that payment to
such financial agent should be a sufficient payment to discharge the
obligations of the Delaware & Hudson Company under the lease.   Said
$10,000 has been deposited with the financial agent since the date of
said lease and paid over to the city.   Such payment seems also to have
been made from the date of said first lease, January 15, 1872.

In 1901, for the purpose of raising money to pay said bonds, which
were about maturing, the city, by its railroad commissioners, adver-
tised that it would sell said stock at public auction, at the office of the
city clerk at Utica, June 25, 1901, at 12 o'clock noon.   At the time and
place designated a notice in writing on behalf of the Utica, Clinton &
Binghamton Company, bearing date June 24, 1901, was served upon
said commissioners and publicly proclaimed, to the effect that said com-
pany "does not assent to or acquiesce in the sale of said stock of the
city of Utica, so far as it is coupled, or attempted to be coupled, with any
transfer of the right of the so-called 'guarantied dividend' of five per
cent. (5%), but reserves the right of this company, on behalf of its
stockholders, to raise any question or questions hereafter with regard to
the same, or with regard to the continued existence of the right of the
city of Utica or any other person or persons, to such 'guarantied divi-
dends.'"   By reason of its effect upon intending purchasers, said com-
missioners permitted said proposed sale to go down, and thereafter pro-
vided for the payment of said bonds by the issue of others which are
still outstanding.   Said stock, with the 5 per cent. guaranty of divi-
dends, is worth $120 per share, but without such guaranty would not
be worth to exceed $75 per share.

On the 12th of November, 1904, pursuant to a resolution of the com-
mon council, the city of Utica, by an instrument in writing, under its
official seal, duly signed by the mayor, city clerk, and the three rail-
road commissioners, sold and delivered five shares of said stock to the
plaintiff, and there was a request in said assignment that, upon pre-
sentation of said certificate No. 554, for 2,000 shares, indorsed by the
mayor, city clerk, and commissioners, under the seal of said city, the
Utica, Clinton & Binghamton Railroad Company issue new certificates,
one to the city of Utica for 1,995 shares, and one to said plaintiff for
five shares of said capital stock, and that on said last-mentioned certifi-
cate there be indorsed, or incorporated therein, the following words:

"Annual dividends of five (5) per cent. upon this stock, payable semi-
annually on June and December 26th, is guarantied, under the lease between
the Utica, Clinton & Binghamton Railroad Company, and the president, man-
ager, and company of the Delaware & Hudson Company, dated December 4,
1889, and recorded December 10, 1889, in the clerk's office of Oneida county in
Book 479 of Deeds, page 441."

Pursuant to this instrument new certificates were demanded of the
Utica, Clinton & Binghamton Railroad Company, the one to the plain-
tiff to be identified by indorsement on or incorporation therein, substan-
tially, in the manner indicated, which was refused.   The stock certifi-
cate held by said city is precisely the same in form as that held by the
owners of the other stock, of which there are outstanding about 6,400
shares.

The plaintiff claims—and the Delaware & Hudson Company's an-
swer admits—that without the proposed or some like indorsement, the

identity of his stock would be lost, and that he might be unable, if occasion required, to prove it was a part of the guarantied stock. He therefore brings this action, in which the city of Utica and the railroad commissioners, though not joined as plaintiffs, concur, and asks that it be adjudged that his stock is covered by said guaranties and entitled to the semiannual dividend of 5 per cent.; that the city of Utica be permitted to surrender its said certificate No. 554, for 2,000 shares of stock, and that the Utica, Clinton & Binghamton Company issue in its stead a new certificate for 1,995 shares of said stock to the city, and a certificate for five shares to him, upon which there shall be indorsed, or therein incorporated, the aforesaid reference to dividends and guaranty; that the Delaware & Hudson Company be directed to continue payment of 5 per cent. semiannual dividends to the said agency, the said Utica City National Bank, whether said stock be held by the city of Utica or its assigns; that, after issue of such certificates, the Utica City National Bank be directed to pay said dividends out of the moneys so deposited with it for that purpose to the holders and owners of said new certificates. The defendant railroad companies claim that the guaranty was to the city of Utica alone, and is not transferable; that the company issuing the stock did not make a valid agreement to pay 5 per cent., and that it cannot be required to furnish evidence as to the identity of so much of said stock as shall be transferred by the city, by indicating therein or thereon that it is a part of said 2,000 shares; and, finally, that the court is without power to direct the performance of the contracts to pay dividends.

The several contracts and leases put in evidence, though not contemporaneously executed, being between the same parties and pertaining to the same subject-matter, should, I think, be construed together and all be deemed in force, except as modified or superseded by those of the later date. Such is the law in the interpretation of statutes in pari materia. Behan v. People, 17 N. Y. 516; People v. Smith, 69 N. Y. 175; Plummer v. Murray, 51 Barb. 201, 202. No reason is apparent for not applying the same rule of construction to contracts. It is a familiar rule that, where instruments are executed at the same time and between the same parties, they are to be read together and considered as one (Knowles v. Toone, 96 N. Y. 534); and though it has been said, if they were executed at different dates, they may not be read as one, all may be considered to see how far the first was modified by the second. Mott v. Richtmyer, 57 N. Y. 49, 65.

This action, so far as I have been informed by the briefs and arguments of counsel, supplemented by my own investigation, is without precise precedent. Novelty, however, is not an insuperable objection to the maintenance of a suit in equity (National Tradesmen's Bank v. Wetmore, 124 N. Y. 250, 26 N. E. 548), or an action at law (Kujek v. Goldman, 150 N. Y. 176, 44 N. E. 773, 34 L. R. A. 156, 55 Am. St. Rep. 670). For each form and kind of action there must have been always a first case. So that the question is not so much whether there is a precedent—a beaten path that may be safely followed and traversed—but whether a wrong has been done or is threatened, which the law can redress or prevent. Id.

I do not understand how any serious question can be raised as to

the binding force of the various engagements entered into by the Utica, Clinton & Binghamton Company and the Delaware & Hudson Company, to pay to the city of Utica the accruing rentals of the former road as rent, or dividends on stock, to the extent of $10,000 annually. The bonding act provides that:

"The petition (of taxpayers) may be absolute or conditional; the acceptance of a subscription, founded on such petition, shall bind the railroad company accepting the same, to the observance of the condition or conditions specified in such petition." Laws 1871, p. 2115, c. 925, § 1.

This became a law May 12, 1871. The commissioners were appointed June 13, 1871.

The petition could not be found at the time of the trial. Whether, therefore, the consents were made after the passage of this act, or the petition contains the condition that the company should pay the 5 per cent. on the stock, does not appear by any direct evidence. The provision, however, is not unlike that contained in the plan proposed by Judge Denio and accepted by the executive committee of the company; and the statute may have been thus amended to meet the situation. The promise bears date June 14, 1871. Thus it will be seen that express statutory authority, to impose the condition and thereby bind the company, was given before this date, and more than 40 days before issue of the bonds. In the absence of evidence one way or the other, what should be presumed?

The contract being within the power of the corporation, made many years ago, and as it would have been had the statute been observed, the circumstances essential to a due execution of the power will be assumed to exist. 16 Cyc. 1075. "Where a transaction would be legal if done in one way, and illegal if done in another, and there was no evidence on the subject, it was to be presumed to have been done according to law." Mygatt v. New York P. Ins. Co., 21 N. Y. 52, 64. The legal presumption is that all statutory conditions have been complied with. Chase v. Lord, 77 N. Y. 1, 7. A recital in an order laying out a highway, reciting that the three commissioners met, though there is no proof that more than two were present, raises a presumption that the third was there as required by statute. Marble v. Whitney, 28 N. Y. 297, 304. Other and similar authorities might be cited. I think, therefore, it may be presumed that the railroad commissioners and the common council of the city of Utica did their duty in making and accepting the contract, and required an observance of all the statutory conditions essential to its validity.

Moreover, if the original assignment of rent, as provided in the instrument of July 14, 1871, be considered as creating a preferred stock—it having been made after the unanimous vote of all the shareholders, apparently consenting to such action—it was still an agreement which the company was competent to make. 10 Cyc. 369. See, also, manuscript opinion of Judge Denio. Acceptance of the advantages arising from the contract and many years' acquiescence work both a ratification and estoppel. Dupignac v. Bernstrom, 76 App. Div. 105, 111, 78 N. Y. Supp. 705; 10 Cyc. 1067, par. 11; Id. 1068 et seq. The guaranty of the Delaware & Hudson Company is contained in three formal instruments, duly executed and delivered; the last one

giving it the possession of the road, with all the appurtenant lands, tenements, fixtures, rolling stock, machinery, tools, and appliances connected therewith, for and during the term of the charter of said lessor. The guaranty has been acquiesced in and acted upon for more than 30 years, thus furnishing a construction by the parties themselves which should not be departed from without good cause. Nicoll v. Sands, 131 N. Y. 19, 24, 29 N. E. 818; Dupignac v. Bernstrom, supra. I have no doubt of its validity. Cook, Corp. § 775; Louisville & Nashville Railroad Company v. Schmidt, 177 U. S. 230, 20 Sup. Ct. 620, 44 L. Ed. 747; Welden National Bank v. Smith, 86 Fed. 398, 30 C. C. A. 133; Dupignac v. Bernstrom, supra.

But it is urged that the city of Utica is not a party to the contract of guaranty, and cannot, nor its transferee, avail itself of the guaranty as a security. The Utica, Clinton & Binghamton Company was obligated to the city; the Delaware & Hudson Company, as tenant, become liable to its landlord, the Utica, Clinton & Binghamton Company, for rent, and has undertaken, on a proper consideration, to discharge that liability in part by assuming the former's promise to pay. The contract of guaranty was both for the indemnity of the lessor road, and the benefit of the city. The taxpayers of Utica were induced to consent to its bonding on the promise that payment of dividends or rent, at the rate of 5 per cent. per annum, would be assumed by the Delaware & Hudson Company. On the faith of that promise the bonds were issued, the stock accepted, and payments were thereafter timely made to the proper officer or depositary, to the use of the city. This constitutes such a contract relation as will enable the city to enforce the obligation. Metropolitan Trust Co. v. N. Y., L. E. & W. R. R. Co., 45 Hun, 84, 91; Beveridge v. N. Y. E. R. R. Co., 112 N Y. 1 19 N. E 489, 2 L. R. A. 648; Durnherr v. Rau, 135 N. Y. 219, 32 N. E. 49; Buchanan v. Tilden, 158 N. Y. 109, 52 N. E. 724, 44 L. R. A. 170, 70 Am. St. Rep. 454.

Is the stock, with the accompanying guaranty, assignable? Where a municipality becomes a stockholder of a railroad company, it becomes such, in the absence of statutory regulation, in just the same manner, is entitled to the same rights, and subject to the same burdens, as an individual holder of stock. Cook, Corp. (5th Ed.) § 99. A municipal corporation, however, is not engaged in the business of banking or money lending, nor, ordinarily, loaning its credit for the benefit of others. The transactions in question were not within the ordinary scope of the purposes for which the city was created. The statute authorizing the bonding provides, among other things, that:

"In case the stock or bonds purchased as aforesaid are sold by said commissioners, such treasurer or other officer shall also invest the proceeds thereof in a * * * sinking fund; and in case the same (i. e. shares of stock) are not sold when said bonds hereby authorized to be created and issued by said commissioners shall mature and the principal thereof become payable, the commissioners shall sell the same or so much thereof as shall be necessary to pay the outstanding principal sum due on said bonds in full, and shall pay the proceeds thereof to such treasurer or other proper officer, to be by him applied to the redemption and payment of such bonds." Laws 1869, p. 2307, c. 907, § 6.

Thus it will be seen that the statute itself contemplated a sale by the city of the stock issued to it; and this the three corporations must have known and considered. It can hardly be conceived that it entered into the minds of the parties that the promises were special to the city, that the stock and accompanying obligations could not be sold, or that the transferee would not acquire the same rights and remedies that were possessed by the original holder. The value of the property would depend largely upon the ability of the city to convert the stock into money, and transfer with it the guaranty of payment. If the 'transferee could not acquire all of the rights of the city, the latter would be hampered and perhaps made unable wholly to sell the stock, so as to make payment of the bonds from the proceeds. It has been held in many cases that a guaranty, general in its terms, always passes to the purchaser of the principal instrument, and that, if it be special or limited to the original taker, that intention must be clearly expressed. Allen v. Culver, 3 Denio, 284; Craig v. Parkis, 40 N. Y. 181, 100 Am. Dec. 469; Claflin v. Ostrom, 54 N. Y. 581; Evansville Nat. Bank v. Kaufmann, 93 N. Y. 273, 45 Am. Rep. 204; Stillman v. Northrup, 109 N. Y. 473, 17 N. E. 379; Everson v. Gere, 122 N. Y. 290, 25 N. E. 492. I think it must be held that, by proper assignment, the transferee of the stock and accompanying guaranty acquires all the rights of the city.

May the plaintiff have the relief asked? The 2,000 shares of stock, with the promise of the Utica, Clinton & Binghamton Company, guarantied by the Delaware & Hudson Company, to pay the 5 per cent. dividends, are worth $120 each; without the guaranty, only $75 per share. The answer of the Delaware & Hudson Company admits that any shares of stock transferred by the city of Utica, would lose their identity as a part of said 2,000 shares; hence would fall into and become a part of the common stock, with a 1¾ per cent. dividend only. See lease 1889. The notice, in effect that on its transfer the stock would no longer have the benefit of the guaranty, prevented a sale at the market value. Indeed, it may have sufficed to reduce it to $75 per share, as testified by Mr. Symonds. The claim then was reiterated both on the trial and in the arguments by counsel for both companies. The notice was a substantial repudiation of that defendant's obligation, and, in effect, placed it in the attitude of promising to default. Crary v. Smith, 2 N. Y. 60. While not in form made by the guarantor, it was an assertion beneficial to it, and one that it now seems quite willing to adopt. The notice caused an injury to the property of the city to the extent, certainly, that the implied charge of invalidity depreciated the value of the stock, and was a wrong done as much, though in a different form, as would be a conversion of property or its disparagement by slander of title or quality. Ought the sufferer from this impairment of value to be remediless, while, if the same injury had been inflicted in a different way, ample redress would be swift and sure?

The power of a court of equity to prevent or redress wrongs, where there is no adequate remedy at law, is without known limitation. It has been said:

"The court very wisely hath never laid down any general rule beyond which it will not go, lest other means of avoiding the equity of the court should be found out." Lawley v. Hooper, 3 Atk. 278, 279.

Because if such a thing were done, "the jurisdiction would be cramped and perpetually eluded by new schemes, which the fertility of man's invention would contrive." Park's History, c. 508. See, also, Mortlock v. Buller, 10 Ves. Jr. 292.

The inquiry whether there is a remedy at law, or in some other form of action, is not here; no such defense having been pleaded. Town of Mentz v. Cook, 108 N. Y. 504, 15 N. E. 541; Rooney v. Bodkin, 93 App. Div. 431, 434, 87 N. Y. Supp. 800. It necessarily follows that, if the plaintiff has any rights whatever, he may assert them in this action. The defendant issuing the stock is not asked to enter into any new, additional, or more burdensome engagement than has been contracted—merely to do that which will identify the property of and which comes from the city, by some suitable mark or indorsement, thus to preserve it from depreciation, and enable the city to dispose of its securities at will and at a price they would bring if not thus threatened. The plan of the men who inaugurated and carried out the enterprise of raising the necessary capital and constructing this railroad—and who, in behalf of their respective principals, made the contracts now under consideration—was that the city of Utica should be paid the dividends mentioned, in any event. This is a circumstance to be kept continually in mind while interpreting the contract. Gillet v. Bank of America, 160 N. Y. 549, 555, 55 N. E. 292, and cases cited. Of course there are no words in any of the various written instruments put in evidence expressly requiring that this identification be made; nor will the courts be permitted to make a contract, where the parties themselves have failed to do it; but the law frequently supplies, by its implications, the wants of express agreements. It implies what the parties intended, but have not expressed in apt words. Pars. Cont. 515. Freston v. Lawrence Cement Co., 155 N. Y. 220, 223, 49 N. E. 768. The words of a contract will be given a reasonable construction when that is possible, rather than an unreasonable one; and the court will likewise endeavor to give the construction most equitable to the parties, and which will not give to one of them an unfair or unreasonable advantage over the other. 9 Cyc. 587; Russel v. Allerton, 108 N. Y. 288, 15 N. E. 391; Smith v. Molleson, 148 N. Y. 241, 248, 42 N. E. 669. That construction will be given which is most beneficial to the promisee. Hoffman v. Ætna Fire Ins. Co., 32 N. Y. 405, 413, 88 Am. Dec. 337.

I conclude that there may be implied an undertaking, on the part of the company issuing the stock, to do such acts as are reasonably necessary to carry out the intention of the parties to the agreement (2 Pars. Cont. 534); that the plaintiff has a remedy, and that business morality and a fair sense of justice require that the proposed indorsement, or something else that will equally serve to identify, be made upon the stock. Campbell v. American Zylonite Co., 122 N. Y. 455, 25 N. E. 853, 11 L. R. A. 596; Boardman v. L. S. & M. S. R. Co., 84 N. Y. 178; Dupignac v. Bernstrom, supra.

Regarding the action, as against the Delaware & Hudson Com-

pany, as one for the specific performance of a contract, concerning personal property, its maintenance would be difficult, if not impossible. Bradford, E. & C. R. R. Co. v. N. Y., L. E. & W. R. R. Co.; 123 N. Y. 316, 25 N. E. 499, 11 L. R. A. 116. The only repudiation of the contract by this defendant is found in the acquiescence in the notice of its principal; the answer denying liability as guarantor, and the argument of counsel. It may yet conclude the contention was ill advised, and for aught that can be foreseen now, it will pay into the proper depository, for the benefit of the stock, the sums promised, leaving no occasion for the interposition of the court. Nevertheless, without a direction at this time that such payment be made, the decree to be rendered would lack completeness. Therefore it is proper to invoke the rule that:

"When a court of equity has once acquired jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of all the matters at issue." Per O'Brien, J., Van Allen v. New York El. R. R. Co., 144 N. Y. 179, 38 N. E. 997.

These suggestions lead to the conclusion that the plaintiff is entitled to the relief prayed for, with costs. Plaintiff's counsel may prepare and submit to their adversaries proposed findings, which, if not assented to after the lapse of 10 days, will be settled by me on notice of 3 days.

Judgment for plaintiff, with costs.