Hinman, J.
This is a motion f-o-r judgment on the pleadings in favor of the defendants dismissing the complaint herein on the ground that it does not state' facts sufficient to constitute a cause of action. The action is one for malicious prosecution.
The plaintiff alleges that she was a professed nun? and .a member of the defendant society; that while she was living at the convent of said society, in October, 1914, “ the defendants, Freeman H. Munson, William J. Halpin and said Society of the Sisters of St. Joseph *677 of the City of Troy, through malice, and with intent to injure and defame this plaintiff, and to deprive her of her home and her religious associates, wrongfully conspired to obtain an order committing this plaintiff to' an insane asylum, namely, to the Middletown State Hospital; and on said October 13,1914, the defendant, Freeman H. Munson, made and verified a petition in lunacy proceedings against this plaintiff, addressed to Hcun. Michael A. Tierney, Judge of the County Court of the County of Rensselaer, a copy of which petition is hereto annexed, marked Exhibit ‘A’ and made a part of this complaint. That the statements contained in said petition as the facts upon which the application was based were wholly false and untrue and misleading. That said Freeman H. Munson did not then know thi-s plaintiff and had no personal knowledge of plaintiff's acts or statements, but relied wholly upon the false information given to him in regard thereto by the defendants, William J. Halpin, and Society of the Sisters of St. Joseph of the City of Troy. That said information furnished and said statements in said petition purporting to describe the acts and statements of plaintiff were false and untrue and misleading land were known by said Halpin and by 'said Society to be false and untrue and misleading, and said false information was furnished by said Halpin and by said Society through malice, and with the understanding, agreement and intent that it should be used by the defendant, Freeman H. Munson, for the purpose of commencing said lunacy proceeding against this plaintiff. That on or about said date, namely, October 13, 1914, the defendant, William J. Halpin, who was then the Priest acting as Chaplain at said Convent of the defendant Society of the Sisters of St. Joseph of the City of Troy, furnished certain information to Dr. C. J. Patterson and Dr. James T. *678 McKenna, two physicians who examined plaintiff at about that date in said lunacy proceedings. That said information was in several important particulars wholly false and untrue, and in other important particulars was misleading and misrepresented the facts to the Court to which said information was presented in said lunacy proceedings. That said defendant, William J. Halpin, then knew said statements to be false and untrue and misleading, but through malice, and with intent to injure this plaintiff, said statements were made and were presented to the said Court. A copy of said information furnished by said defendant, William J. Halpin, is hereto annexed and marked Exhibit ‘ .33 ’ and made a part of this complaint. That said Sister M. Irene and the other local officials of said Society of the Sisters of St. Joseph of the City of Troy, and the defendant, William J. Halpin, knew that said statements were false and untrue, and misleading, but notwithstanding the said Society wrongfully and maliciously prosecuted said lunacy proceedings, with intent to injure and defame the plaintiff, and as a part of the plan and purpose of said Halpin and said Society to prevent plaintiff from remaining at said Convent. That said petition of the defendant, Freeman H. Munson, and the certificate of said Doctors C. J. Patterson and James T. McKenna, including said statements and information furnished by the defendant, William J. Halpin, were presented to Hon. Michael A. Tierney, County Judge of Rensselaer County, and a hearing thereon was -subsequently had before said County Judge of Rensselaer County, and plaintiff was examined and cross-examined at great length therein. That none of the defendants had any reasonable grounds to believe that the plaintiff was then insane, and the defendants, William J. Halpin, and the Society of the Sisters of 'St. Joseph of the City *679 of Troy, then knew that the plaintiff was then sane, and so treated and regarded her. That the defendant, Freeman H. Munson, acted, upon the false and misleading information furnished by the defendant, William J. Halpin, without reasonable or sufficient inquiry as to its truth or falsity. That said proceeding resulted in a decision wholly in favor of this plaintiff and said petition was dismissed and plaintiff was declared to be sane.
' ‘ Fourth. That the wrongful and unlawful and malicious acts of the defendants in falsely accusing the plaintiff of being insane, and the unlawful, wrongful and malicious attempt of the defendants to have plaintiff adjudged insane and committed to an insane asylum, have injured this plaintiff in her standing and reputation ás a member of the Society of the Sisters of St. Joseph of the City of Troy, and in the community in which she resides, and have deprived her of the means of support upon which she was accustomed' to rely, and have deprived her of the only home which she had ¡mown for many years, and of the society of her natural friends and religious associates, and have rendered it almost impossible for the plaintiff to obtain employment in any capacity whatever, .and that by the aforesaid acts of the defendants, plaintiff has suffered loss and damage in the sum of fifty thousand dollars ($50,000.)”
This action was commenced on October 16, 1916. The defendants duly answered in January, 1917, serving a joint and separate answer as follows:
‘ ‘ 1. These defendants admit that in March, 1901, the plaintiff entered St. Joseph’s Convent in the City of Troy, N. Y.
“ 2. These defendants admit that on October 13, 1914, the defendant, Freeman H. Munson, made and verified a petition in lunacy proceedings against this *680 plaintiff addressed to Hon. M. A. Tierney, Judge of the County Court of the County of Bensselaer, but do not admit that Exhibit ‘A’ annexed to and made a part of the complaint is a true copy of said petition; that the said Freeman H. Munson did not then know the plaintiff; that the defendant, William J. Halpin, was then a priest and was acting as Chaplain of the Convent of the Sisters of St. .Joseph in the City of Troy, and that Doctors C. J. Patterson and James T. McKenna were physicians and that they examined this plaintiff on or about October, 1914, in said lunacy proceedings; that certain information was furnished upon request by the defendant, William J. Halpin, on or about said time, but do not admit that Exhibit ‘ B ’ annexed to and made a part of the complaint is a true copy of said information; that the petition of the defendant, Freeman H. Munson, and the certificates of Doctors C. J. Patterson and James T. McKenna were presented to Hon. Michael A. Tierney, County Judge of Bensselaer County, and a hearing thereon was subsequently had before said Judge of Bensselaer County and said plaintiff was examined and cross-examined in said hearing, and that as a result of said proceeding, the petition was dismissed and the plaintiff was declared not insane.
“ 3. These defendants deny, generally and specifically, each and every other statement, allegation and averment contained in said complaint, and not herein-before specifically admitted or specifically denied.”
The attorney for the plaintiff has called to the attention of the court by his own affidavit read upon this motion, that this ease has been tried twice and has been troublesome on both the law and the facts, resulting each time in a disagreement as to the two defendants who are left as the sole defendants in the case. The object of counsel was to call the attention *681 of the court to the fact that this motion for the dis-l missal of the complaint has several times been made in the courts in connection with the two trials which have preceded, and that the same issue was presented by counsel for the defendants in his brief in the Appellate Division upon an incidental appeal to that court from an order granted herein.
While ordinarily I would feel precluded from entering into a further consideration of such a motion, it seems to me that the history of this case not only warrants my giving serious consideration to it but the successful conclusion of this litigation for the good of the parties and to save unnecessary expense to the county of Rensselaer, and unnecessary interference with the trial of other important litigation in that county, requires that the law of this case, which involves interesting and novel questions, be settled before there shall be another trial. Each time this case has been tried there has been a protracted trial. The first time it was brought to trial in May, 1917, before Mr. Justice Hasbrouck and a jury, resulting in a verdict of no cause of action in favor of the defendant Freeman H. Munson, and a disagreement as to the remaining defendants. Upon that trial motions were made for a dismissal of the complaint upon the ground that it does not state facts sufficient to constitute a cause of action, at the outset of the trial, at the close of the plaintiff’s case, and at the close of all the evidence. The court denied these motions. Upon the coming in of the report of the jury with a verdict of no cause of action in favor of the defendant Munson, the defendants Halpin and the society again moved for a dismissal of the complaint as to them and said motion was denied. There was an appeal from that order denying said motion.
The Appellate Division (180 App. Div. 157) dis *682 missed the appeal, however, upon a matter of practice, holding that the determination of the trial court was not an order in the sense in which that term is used in the Code of Civil Procedure from which an appeal could be taken, but that it was a ruling made during the course of the trial, and could only be reviewed upon an appeal from the judgment affected by such ruling. The Appellate Division did not consider the question whether the complaint did state a cause of action, but confined itself to a determination as to the right of appeal from such a ruling.
At the March term, 1918, a second trial of the case was had before Mr. Justice Nichols and a jury, which again resulted in a disagreement as to the remaining two defendants. Upon that trial, the defendants again moved to dismiss the complaint at the beginning of the trial, at the close of the plaintiff’s case and at the conclusion of the testimony. The court again denied each of these motions.
The situation presented now is the complaint against the defendants Halpin and the society, judgment having been entered in May, 1917, in the Bensselaer county clerk’s office dismissing the complaint herein upon the merits in favor of the defendant Munson.
It seems to be the settled practice to permit such a motion under section 547 of the Code of Civil Procedure to be made at Special Term as well as at the opening of trial. Whatever further trial there is must be a trial de novo as to the remaining two defendants. Realty Associates v. Hoage, 141 App. Div. 800; Dinzen v. May, 149 id. 471.
An important purpose to be served in entertaining this motion is that the court at Special Term may give more deliberate consideration to the motion than would be possible under the usual conditions attending *683 a trial term. This is so apparent that I need not apologize further for having seriously considered this motion nor for reaching a conclusion contrary to the judgment of Justice Hasbrouck and Justice Nichols upon the preceding trials.
The main reason, however, which actuates me in examining the question anew is the thought that' the law of this case should be settled upon appeal before there is a third trial. The very persistency of counsel for the defendants in presenting these motions for dismissal upon the basis of the law as he understands it leads me to believe that even if there should be judgment against the defendants at a third trial, he would be led to appeal to the highest appellate tribunal for the determination of the law of the case. If there should be one or more further disagreements of the jury resulting finally in a judgment for the plaintiff, the defendants might upon resort to the Court of Appeals obtain a judgment of that court that the complaint stated no cause of action. If that is to be the eventual determination of this case it would be deplorable that so much time should have been spent and so much expense incurred by the parties and the county needlessly.
I am sufficiently satisfied of the likelihood of the ultimate success of the defendants’ contention that the complaint does not state a cause of action, to conclude to render judgment in favor of the defendants upon the pleadings.
The petition in the insanity proceeding was made by Munson, the superintendent of the poor of the county, and the certificate in lunacy was made by two physicians, examiners in lunacy, not joined as defendants. There is no charge that the physicians conspired with the defendants to have the plaintiff declared insane and the verdict of the jury has estab *684 listed the fact that there was no cause of action against Munson.
The complaint has not been amended since the entry of judgment dismissing it as against the defendant Munson. It is a fact, however, which is acquiesced in by all the parties and I will examine the pleadings in view of the true state of the record, as it would be a mere idle formality to require amendments, or to decide the motion on matters contrary to the true state of the record as conceded by all of the parties.
Therefore, the situation on the pleadings is that the defendants Halpin and the society are charged with a conspiracy to have the plaintiff declared insane; that the physicians who made the certificate in lunacy are not joined as defendants, and are not charged with! any misconduct, and that the defendant who made the petition, namely, Munson, has been held blameless by the verdict of the jury. Vose v. Yulee, 64 N. Y. 449.
A malicious prosecution is one that is begun in malice, without probable cause to believe it can succeed, and which finally ends in failure. Burt v. Smith, 181 N. Y. 1-5.
It seems to be settled' that in an ordinary civil action, if the person or property of the defendant therein has not been interfered with, the action for malicious prosecution will not lie, even though such civil action was instituted maliciously and without probable cause, and was for the conversion of moneys under circumstances amounting to grand larceny. Paul v. Fargo, 84 App. Div. 9.
In the case of Halberstadt v. New York Life Ins. Co., 194 N. Y. 1, which was a case of alleged malicious prosecution by means of criminal process, the Court of Appeals did not overrule the doctrine laid down in Paul v. Fargo, but said that it must be interpreted with reference to the fact that it was concerned with *685 civil process and that in a criminal case the basis of recovery “may be that inflicted upon the feelings, reputation and character by a false accusation as well as that caused by arrest and imprisonment.”
Passing the question, however, whether the proceeding in lunacy was in the nature of a civil or criminal prosecution, and whether a cause of action for malicious prosecution can arise out of such a proceeding, where there has been no interference with the person or liberty or property of the plaintiff, but assuming that a cause of action for malicious prosecution can arise out of such an insanity proceeding, the first question which presents itself is whether the complaint states a cause of action against the remaining defendants, Munson, one of the real actors, having been held blameless and the physicians, the other real actors, not having been charged with any wrongdoing.
In a, malicious prosecution action arising out of a criminal case, it has been held immaterial whether the defendant alone formally prosecuted an arrest or whether he stirred up and procured another to do it. Dann v. Wormser, 38 App. Div. 460.
Assuming for the present the applicability of this decision in a criminal cause, it must be conceded that where the actors as they appear upon the record act lawfully and properly and their acts are the proximate cause, the acts and motives of those who procure them to act become immaterial, because remote.
The jury has found that there was no cause of action against Munson. It may be contended that the jury may have found this either because there was no malice on his part, or because there was probable cause, and not because of the absence of both malice and probable cause. Surely, however, in the absence of a conspiracy between the defendants, including Munson, it could not be said that there was an absence *686 of probable cause to believe he would succeed in the mind of Munson, when he was supported in his petition by the certificate of two qualified medical examiners in lunacy, who rendered to him an opinion that the plaintiff was insane and who were not charged by the complaint with being co conspirators. Also, how can it be inferred that the jury concluded there wasi any presence of malice on the part of Munson, notwithstanding the fact that he was charged by the complaint with a reckless and careless failure on his part to investigate statements alleged to have been made to him where it appears upon the face of his petition, which is a part of the complaint, that he stated facts “ observed by or information known to him,” which would tend to show the existence of insanity? This petition was verified by him and if the charge alleged against him in the complaint is true it must be assumed that he was guilty of perjury in his petition in having alleged that the facts stated by him were “ observed by or information known to him.” There cannot b'e any inference, however, that the defendant Munson was guilty of the crime of perjury. If this be so, then Munson did not rely upon anything but his own observation and knowledge as stated in his petition. I, therefore, believe it must be presumed that the jury acquitted Munson of being a conspirator or of having lack of probable cause, or of having been malicious! It follows also that the act of Munson was the proximate cause, and any acts of the other defendants, however malicious and lacking in probable cause, become immaterial, because remote.
The defendant Munson, who signed the petition and who instituted it before the county judge, was the superintendent of the poor of Rensselaer county, and it is alleged that he in effect was the tool and agent of the two remaining defendants, and that the informa *687 t-ion as to the acts and statements of the plaintiff recited in the petition, were false and untrue and were furnished by the two remaining defendants with the understanding, agreement and intent that it should be used by the defendant Freeman H. Munson for the purpose of commencing said lunacy proceedings against this plaintiff. The dismissal of the complaint on the merits as against the defendant Munson authorizes the dismissal of the complaint as to the other two defendants, not only because the conspiracy charge has failed and because Munson’s own act was the proximate cause, but for an additional reason which sounds in good public policy.
It was the purpose of this law not only to be of service to those who are not responsible for their acts, and need the institutional care afforded by the state, but for the benefit of the public at large who need protection from their irresponsible acts. It is a very old institution of the state, and the law has surrounded the proceeding with every reasonable safeguard for the protection of the individual against improper charges of insanity. To this end the law has granted a special privilege to certain persons holding intimate relationship to the alleged insane person and to certain public officers of which the superintendent of the poor is one, to institute such a proceeding and then only upon the supporting certificate of two medical examiners in lunacy, who have been shown to have special qualifications to make the examination and to render their opinion as to sanity or insanity.
The wise public purpose to be served in the protection of the public from those who by their apparent irrational acts have given rise to the necessity of an examination into their sanity, should not be curtailed by subjecting the person privileged under the statute to initiate the proceeding to an action for malicious *688 prosecution where the proceeding has been terminated by a judicial finding of sanity, in the absence of proof of a conspiracy on the part of such actor with others to maliciously and without probable cause vex and harass and injure the person charged with insanity, or in the absence of any improper interference with' the liberty of the individual during the course of the proceeding. In the case of such a conspiracy, or if the liberty of the person is improperly interfered with during, or as a result of, the proceeding, a different question is presented. In that event an action for false imprisonment or for malicious prosecution would arise, but that is not this case. It, therefore, seems to me that this proceeding should be considered as sui generis, and upon the basis of sound public policy, in the absence of conspiracy or improper interference with person or property and where there is no jurisdictional defect in the proceedings, a superintendent of the poor must be deemed to have instituted a proceeding upon his own responsibility and official sanction under his statutory privilege, and where he is held blameless it must be presumed that he did act upon his own responsibility as a public officer charged with that power and duty and that there can be no inference that a proceeding would have been instituted if it had not received his official sanction and if the act had not been committed as his own official act. The question in such a case becomes solely one of power and authority of the superintendent of the poor to act. In the case at bar, there is no change of jurisdictional defect and the good faith of Munson has the support of presumption, since the jury has failed to find a verdict against him upon that issue.
But let us analyze the situation still further so far as the complaint charges malice and lack of probable cause against the two remaining defendants. Before *689 insanity proceedings could be properly instituted there must have been a certificate in lunacy by two qualified medical examiners in lunacy, to the effect that the plaintiff was insane. It appears from the complaint that such a certificate was made. The details are given only in part and there is a general statement that certain of the statements made to the physicians were false or misleading. It appears from the statute that the examining, physicians must be qualified examiners in lunacy; that they must make their own examination of the alleged insane person, and state the facts upon which their opinions are based. The form prescribed for the certificate as appears from the complaint is divided into two parts: one for the statement of the history of the patient, and the other for the statement of the examination of the physicians, There is no claim that the certificate was irregular or that the physicians were careless or were engaged in any conspiracy with the defendants. I must, therefore, in the absence of allegations to the contrary, assume that the certificate complied with the statute and that the examination was conducted with reasonable care. Chase v. Lord, 77 N. Y. 1; Buffalo City Bank v. Codd, 25 id. 163, 168; Heuertematte v. Morris, 101 id. 63, 69.
To hold otherwise would be to presume a violation of the statute and malpractice on the part of the physicians where nothing to this effect appears.
The only allegation of the complaint in relation to the proceeding by the physicians requiring attention is that some of the statements contained in the history of the patient were false or misleading and were supplied by the defendant Halpin. The false or misleading statements are not pointed out. None of them appear to be very vital on the question of insanity except those in relation to a certain disease and the use of *690 drugs which were answered in the negative. The facts that a member of plaintiff’s family, an aunt, had been insaixe and that plaintiff had had a previous attack, were important as a matter of history and statistics inasmuch as they pointed out the institutions where confinement was had at the time. This would enable the physicians and the comniitting judge to investigate from the records of such institutions previous attacks of insanity and would be of value in determining the care and treatment that should be provided for such patient in the event of the determination that the patient was insaixe and needed further treatment. Most of the matters contained in the history as set forth in the certificate in question are immaterial on the question of insanity. I am unable to determine which of the statements in the history were true, or false or misleading, and if misleading in what respect. In any event it is not alleged that they did mislead the physicians or that they had any bearing on the matter determined by the physicians. Essential facts cannot' be left to inference. A pleading cannot be upheld simply because a state of facts might exist. Spear v. Downing, 34 Barb. 522; Phillips v. Sonora Copper Co., 90 App. Div. 140, 148.
The situation, therefore, is that for aught that appears the certificate in lunacy was a fair statement of the opinions of the physicians made after their examination of the plaintiff that the plaintiff was insane. There is no allegation that the physicians were conspirators or were engaged in any unlawful, malicious or improper scheme or practice. Did not this as a matter of law furnish reasonable and probable cause for the proceedings?
A layman is incompetent ordinarily to give an opinion as to the insanity of another. The physician who is an examiner in lunacy must be deemed compe *691 tent in the eyes of the law in the absence of any charge to the contrary. If a court of justice will not receive the opinion of the layman on such a matter will it not protect him when acting on the opinion of those who are competent in the eyes of the law? It seems to me that such must necessarily be the rule where the physicians proceed in a proper manner and not as the result of any scheme or conspiracy to accomplish an unlawful purpose.
Public policy and the dictates of humanity require for the protection of those of unsound mind and of society in general, that such persons be cared for; on the other hand the liberty of a citizen and his good name must be jealously safeguarded. A charge of insanity does hold a person up to pity and has a tendency to cause him or her to be shunned or avoided. Such a charge may be fraught with most mischievous and oppressive consequences. The law, therefore, permits a certain limited number of persons standing in intimate relationship to the alleged insane person or certain public officers, to petition in insanity proceedings. Accompanying this petition there must be a certificate by two physicians specially qualified to make it. "Where the physicians and the petitioner enter into a conspiracy with each other or with others to institute such proceedings maliciously and without probable cause there should be a right of action for the damage suffered. Otherwise there would be little protection from the unscrupulous. Where, however, two qualified medical examiners independently and not in pursuance of a scheme and conspiracy on their part with others to accomplish an improper purpose, make a certificate in lunacy, it ought to furnish reasonable and probable cause to those who set on foot the proceeding under the Insanity Law irrespective of their motives. Burns v. Erben, 40 N. Y. 463.
*692 Counsel for the defendants relies upon the application of the case of Paul v. Fargo, 84 App. Div. 9. It may be that this decision is applicable, but if it is applicable it must be upon the theory that it ought to be the policy of the law to permit the persons privileged under the statute to bring this proceeding, to do so freely and without subjecting themselves to a suit for damages in case of an adverse decision, where they have in no manner interfered with the person or property of the person charged with insanity and where there is no charge of an improper scheme entered into on the part of the person instituting the same to accomplish an improper purpose maliciously and without probable cause.
I have, therefore, not relied upon that authority, but have sought to analyze the statute in connection with the charges set forth in the complaint, and for the reasons stated I have concluded that the complaint does not state a cause of action against the remaining defendants.
Ordered accordingly.